UTICA,
July, 1835.

Bakeman
v.
Rose.

## Bakeman *vs.* Rose and wife.

Where a judge charged a jury that when a great number of witnesses impeach the character of a witness, the testimony of such witness is destroyed; but if an equal number of witnesses, of the same respectability and possessing like means of knowledge with the first, sustain the witness attacked, his character stands as if no impeachment had been attempted; that, however, it was the *province of the jury* to say whether the witness was or was not impeached, this court refused to reverse a judgment, holding that the question of the *credibility* of the witness had been substantially submitted to the jury.

Where a witness, in advance of a question put to him by the party who calls him, states a fact requiring explanation, the court before whom the trial is had may in its discretion permit the party to examine into the grounds of the statement of the witness.

Proof that a witness is a *public prostitute* is inadmissible for the purpose of impeaching her.

ERROR from the Oswego common pleas. Eliza Pooler, now the wife of Henry D. Rose, brought an action of assault, battery and false imprisonment against Bakeman, and in the declaration charged the defendant with the attempt to ravish. On the trial of the cause, the plaintiff proved, by one *Sally Holton*, the only witness introduced to maintain the action, three distinct assaults, batteries and false imprisonment committed on the plaintiff by the defendant: the first in *May*, the second in *June*, and the third in *August*, 1832. A number of witnesses called by the defendant testified that the character of Sally Holton for truth and veracity was bad; whilst, on the other hand, a number of witnesses testified that her character for truth and veracity was good. One of the latter number, on his *direct examination*, testified that since September, 1833, he had heard some people speak *against* her character, and others had spoken favorably; whether the greatest number spoke *in favor* or *against* her character for truth and veracity he could not say. The counsel for the plaintiff inquired who were the persons whom he had heard speak against the character of Sally Holton. This question was objected to as improper upon a *direct examination*, but the

objection was overruled ; and, as the bill of exceptions states, "the question was answered by the witness, but no testimony was introduced under this decision of the court." The defendant offered also to prove that Sally Holton had the reputation of being a *public prostitute;* which evidence was objected to by the plaintiff and excluded by the court. The testimony being closed, the presiding judge in substance charged the jury that when a great number of witnesses impeach the character of a witness, the testimony of the witness thus impeached is destroyed ; but if an equal number of witnesses of the same respectability, and possessing like means of knowledge with the first, sustain the witness attacked, his character stands as if no impeachment had been attempted ; that, however, it was the province of the jury, under all the circumstances, to say whether the witness in this case was or was not impeached. The jury found a verdict for the plaintiff, with $1000 damages, on which judgment was entered. The defendant having procured a bill of exceptions to be signed, sued out a writ of error.

*B. Davis Noxon,* for the plaintiff in error. The proof offered, that the witness upon whom the plaintiff solely relied to sustain the action was a *public prostitute,* ought to have been received ; for had it been received, the jury would not have given credit to her testimony, and consequently the plaintiff could not have recovered. In *Massachusetts* it has been decided that the credit of a female witness may be impeached by showing that she is a common prostitute. *Commonwealth* v. *Murphy,* 14 *Mass. R.* 387. So in *North Carolina* and *Kentucky* a party may impeach the *general moral character* of his adversary's witness, and is not confined to the question of his reputation for *veracity,* 2 *Hayw.* 300, and 3 *Marshall,* 261 ; although the adverse party may afterward inquire respecting the reputation of the witness in point of *veracity,* 3 *Bibb.* 258. In this state the question has never been directly presented for the consideration of the court. In *Jackson* v. *Lewis,* 13 *Johns. R.* 504, there was an offer to impeach a female witness, by proof that in her *younger days* she had been a *public prostitute,* which was rejected at the circuit, and the decision approved

in bank. In pronouncing the opinion, Chief Justice Thomp-son says it would not be competent to prove that she is *now* a public prostitute ; but that was not the question before the court, and that case therefore is not a decision upon the point now presented. A person rendered infamous by conviction for a felony is not a competent witness ; no inquiry is made as to his character for veracity, his character in that respect being merged in the deeper stain of felony. So as it regards a *common prostitute*, what reputation can she have for truth or veracity ? What infamy, growing out of a criminal conviction, can compare with the degradation of a female sunk into a common prostitute ? The judge erred also in permitting, on the *direct examination*, inquiries which could be proper on-ly upon a *cross-examination*, 7 *Cowen*, 263; and he erred in instructing the jury that a witness impeached by many witnes-ses stands as if no impeachment had been attempted, provi-ded that his character is sustained by witnesses equal in num-ber and of equal respectability with those who attacked him.

*J. R. Lawrence & S. Stevens,* for the plaintiff, insisted that the *infamy* of a witness did not render him incompetent to testify, unless *convicted of an infamous crime* by the judg-ment of a court of competent jurisdiction. In actions sounding in damages, the *general moral character* of the *plaintiff*, but not of his *witness*, may be inquired into. Where the witness has not been *convicted* of an infamous crime, the only inquiry allowable is as to his character for truth and veracity ; and the proper question to be put to a witness, for the purpose of impeaching the general character of another witness, is whether he would believe him upon his oath. *Starkie's Ev. part* 2, *p.* 146. 3 *Johns. Ch. R.* 558. 2 *Wendell,* 555. 4 *id.* 229. *Swift's treatise of Ev.* 143. 4 *Esp. N. P. R.* 104, *n. t.* It is undoubtedly true, that the testimony of a person who, by the turpitude of his con-duct, has shown that he is regardless of all laws, both hu-man and divine, ought not to be received, for it cannot rea-sonably be expected that he would regard the obligation of an oath ; still, the only evidence of such turpitude is a conviction of some infamous crime. The mere aberration from the path of rectitude or even constant violations

of the laws of morality, will not render the witness incompetent. Incontinence of the most indecent kind in a *male* will not exclude him from testifying; and although his offence is not as odious, it is equally immoral as that of the public prostitute. To pass one step beyond the well established rules of law on this subject would involve courts in inextricable difficulties. The case cited from 14 *Mass. R.* 387, was not followed in 3 *Pickering*, 194, and has been considered as overruled by the latter case. In Kentucky, too, where it is held that inquiries may be made as to the general moral character of a witness, no inquiries can be made as to any particular vice of which the defendant is guilty. 2 *Haywood*, 300. 3 *Bibb*, 258. In this state the law is settled. In the case of *Jackson* v. *Lewis*, 13 *Johns. R.* 504, the court say that evidence that a witness is a *public prostitute* is not competent; that an inquiry as to particular immoral conduct is not admissible; and that the inquiry should be as to the witness' character for truth and veracity. The same general rule is laid down by Chancellor Kent, 3 *Johns. Ch. R.* 538.

As to the objection to the cross-examination of the plaintiff's witness: No evidence was given under the decision of the court; but had it been otherwise, it would have been proper, a party having a right to cross examine his own witness when he assumes an adverse position. 4 *Wendell*, 229. The charge to the jury was right. The question whether, under all the circumstances, the witness should be considered as impeached, was submitted to the jury. But the conclusive answer to this objection is, that the charge was not excepted to on the trial.

*Noxon*, in reply, said that he did not wish to impugn the rule that the inquiry must be as to the general character of the witness for truth and veracity, and not as to the particular acts of which the witness may have been guilty. The offer here was not to prove that the witness had been unchaste upon a particular occasion, or had repeatedly aberrated; but that she had suffered a total wreck of moral character—had sunk so low in degradation and vice that she must be considered as lost to all moral perceptions, or as having vol-

untarily abandoned all moral obligations as the rule of her conduct; and if so, what character could she have for veracity, entitling her testimony to any consideration in questions affecting the interests of others.    He insisted that confidence could not be reposed in the testimony of a *public prostitute;* and if so, the fact that a witness was thus degraded ought to be permitted to be shown.    As to the case cited from 3 *Pick.* 194, he contended that it did not overrule the case in 14 *Mass. R.*, but on the contrary recognized it as sound law, though it was considered inapplicable to the case then under consideration.    In that case, the witness sought to be impeached was made a witness by statute, and the court deemed the evidence offered immaterial, the character of the witness for chastity being sufficiently impeached by her own confession.

*By the Court,* SAVAGE, Ch. J.    On the supposition that an exception was taken to the charge of the court, I see no cause to find fault with it when understood as the court no doubt intended to decide.    The idea of the court was, that when an equal weight of testimony is produced on either side and placed in opposite scales, no effect is produced.    The maxim of law is *"ponderantur testes, non numerantur."*  3 *Stark. Ev.* 470.   The court considered the testimony of the defendant as neutralized by that of the plaintiff, and that therefore the witness stood unimpeached.    The credibility of testimony depends not so much upon the number of the witnesses as upon their characters, their connection with the parties, their manner of testifying, and other circumstances of which the jury are the proper judges.    The court came to the correct conclusion, by stating to the jury that it was their province to decide whether the witness was impeached : that is, whether she was worthy of credit.    The court judge of the *competency* of witnesses ; the jury of their *credibility.*   It is usual to say that the jury are to weigh the testimony.    When it is all on one side, and no impeachment of any kind, there is nothing to be weighed—there is nothing in the opposite scale ; but where there is contradictory testimony, or testimony on one side, and that impeached by testimony or by circumstances, then the jury must

UTICA.
July, 1835.

Bakeman
v.
Rose.

weigh it, and give credit or not, as one or the other scale preponderates. The charge I think could not be misunderstood by the jury, as stating that the witness was competent, and it was for them to say whether she was credible.

As to the second exception, it is unnecessary, perhaps improper, to discuss it at all, as no testimony was given under the decision excepted to. I will merely say, that in general it cannot be necessary or proper, for the party calling a witness to impeach another, to go at all into particulars. He proves the character to be either good or bad, and there stops; the opposite counsel inquires, if he chooses, into the means of knowledge of the witness who is testifying. But if the witness goes in advance of the question put by the counsel who calls him, and says that since a certain period he has heard some people speak against the witness, whose character is sought to be impeached, the court may in its discretion permit the inquiry who those persons are, with a view to ascertain whether they are not in some way connected with the opposite party, or whether the bad character of the witness has not been produced by efforts of such party. 7 *Cowen,* 263.

The main question in the case is, whether the defendant below had a right to prove that the witness Sally Holton was a *public prostitute.* This point was expressly adjudged near twenty years ago, in *Jackson* v. *Lewis,* 13 *Johns. R.* 504, 5. In the language of Chief Justice Thompson, " The inquiry should have been as to her character for truth and veracity. At all events, this should have been the principal and first inquiry; but that was not attempted. The inquiry as to any particular immoral conduct is not admissible against a witness." This rule has not been departed from, to my knowledge; a discusssion of it is unnecessary. It is not improper, however, to refer to the reasons by which it is supported by writers upon the law of evidence. *Starkie* says the credit of a witness may be impeached by general evidence, that he is not worthy to be believed under oath, but no evidence can be given of collateral facts, for the purpose of discrediting him. This would lead to an indefinite number of issues. The character of each witness might be impeached by separate charges, and loaded with such a burthen of collateral proof that the ad-

ministration of justice would become impracticable. Besides, although every man may be supposed capable of defending his general character, he cannot be prepared to defend himself against particular charges. *Stark. Ev. pt. 2d, p.* 146, 7. *Swift's Ev.* 143, 4. 1 *Phil. Ev. ch.* 8, § 7, *p.* 229.

Judgment affirmed.