ALBANY,
January, 1838.

The People
v.
Abbot.

## THE PEOPLE *vs.* ABBOT.

On the trial of a person charged with the crime of rape, or an assault with an intent, &c. the inquiry may be made of the prosecutrix whether she had previous connection with other men ; and it seems that she, in such case, is not privileged from answering.

The prosecutrix may be shown to be in fact a common prostitute ; so also a previous voluntary connection between her and the prisoner may be proved ; and evidence may be given of particular acts and associations, indicating on her part a want of chastity.

It seems also, that the general character of the prosecutrix as a common prostitute may be shown ; and that the prisoner is not restricted to proof of her general character for truth and veracity, but may give evidence of her general moral character.

The same rules of evidence are applicable to a trial for an indictment for a simple assault and battery on a female, followed with carnal knowledge.

The magistrate before whom the complaint was made cannot be called to state what the prosecutrix testified before him as to her having had previous connection with other men, if the inquiry is not made for the purpose of showing a discrepancy in the testimony of the prosecutrix.

Where the present character of a witness for truth and veracity is slightly impeached, evidence of bad character in that respect in years past is admissible.

Where a prisoner is tried in a court of general sessions, on an indictment for a rape and an assault with intent, &c. and the jury convict of an assault and battery only, judgment cannot be rendered ; the sessions not having jurisdiction of the offence of rape.

THE defendant was tried at the Wayne general sessions on an indictment charging him with the crime of *rape,* and also with an assault with the intent to commit a rape. The district attorney proceeded to the trial without entering a *nolle prosequi* on the counts charging the principal offence. The

jury found the defendant guilty of an *assault and battery* only. The defendant having excepted to various decisions made in the progress of the trial, the first judge of the county courts granted a certificate that it was expedient to take the judgment of this court in the case, and a bill of exceptions having been sealed, the indictment and bill of exceptions were removed into this court by certiorari, according to the provisions of the statute. On the trial at the sessions the *prosecutrix*, on whom the rape was charged to have been committed and who testified as a witness in support of the prosecution, on her cross-examination was asked whether she had ever had carnal connection with any person other than the defendant previous to her connection with him. The district attorney objected to the question and the court decided that it should not be put, and overruled the same. The counsel for the defendant asked the magistrate before whom the complaint was made, whether the prosecutrix testified before him, on her examination, that she had connection with any person before she had connection with the defendant : this question was also objected to and overruled. The defendant was a married man and a preacher of the gospel ; his counsel inquired of a female witness (Mercy Foster) who had resided in his house a portion of the time during which the prosecutrix alleged that the defendant had intercourse with her, whether she had ever observed any immodest intercourse or any improper familiarity between the defendant and the prosecutrix. This question was also overruled. The defendant having adduced some evidence slightly impeaching the character of the prosecutrix for truth and veracity, offered to prove that her character in that respect was bad six or seven years previous to the trial; to the introduction of which testimony the district attorney objected and the same was excluded by the court. The defendant excepted to these several decisions, and the questions submitted to this court arose upon those exceptions. The case was argued in this court by

*J. M. Holley*, for the defendant.

*S. Beardsley*, (attorney general,) for the people.

*Margin notes:* ALBANY, January, 1838. The People v. Abbot.

*By the Court,* COWEN, J.   The question proposed to be addressed to the magistrate was improper, as any thing which the prosecutrix had sworn before him was but hearsay.   The offer was not made with the purpose of showing that any thing which she said there was contradictory to what she had sworn on the trial.

The question proposed to be addressed to Mercy Foster was irrelevant.   She had occasionally lived at the defendant's while the prosecutrix was serving there.   Her failing to see the defendant take improper liberties with the prosecutrix, would not go a hair to negative the fact of the stolen interviews between the prosecutrix and this married man. They are all stated by the prosecutrix to have been secret, nor was any one instance of open approaches, at the defendant's house or any where else, given in evidence.   The defendant was not only a husband but a clergyman; and it may be assumed that he would avoid all improper appearances, especially in presence of the witness.   A course of inquiry such as is implied by this question would be an idle waste of time.

The question to the prosecutrix herself, whether she had not had previous criminal connection with other men, was, I think, proper, assuming, as we do at present, that the defendant could be considered on trial either on the charge of rape, or for an assault and battery with intent to commit that crime.   In such a case the material issue is on the willingness or reluctance of the prosecutrix—an act of the mind.   These offences, as well as the kindred moral crime of mere seduction, to which, on examination, they often dwindle down, are in their very nature committed under circumstances of the utmost privacy.   The prosecutrix is usually, as here, the sole witness to the principal facts, and the accused is put to rely for his defence on circumstantial evidence.   Any fact tending to the inference that there was not the utmost reluctance and the utmost resistance, is always received.   That there was not an immediate disclosure, that there was no outcry, though aid was at hand and that known to the prosecutrix, that there are no indications of violence to the person, are put as among the circumstances

ALBANY,
January, 1838.

The People
v.
Abbot.

of defence ; not as conclusive, but as throwing distrust upon the assumption that there was a real absence of assent. 1 Hale's P. C. 633. A mixed case will not do ; the connection must be absolutely against the will ; and are we to be told that previous prostitution shall not make one among those circumstances which raise a doubt of assent? That the triers should be advised to make no distinction in their minds between the virgin and a tenant of the stew ? between one who would prefer death to pollution, and another who, incited by lust and lucre, daily offers her person to the indiscriminate embraces of the other sex ? And how is the latter case to be made out ? How more directly and satisfactorily than by an examination of the prosecutrix herself? I speak not now of her privilege, though the question being relevant, I do not believe there is either principle or authority which would allow it to her. 1 Phil. Ev. 279, 7th ed. *Roberts* v. *Alatt*, 1 Mood. & Malk. 192. But she did not claim any privilege. The question was overruled on another ground, whereas it may always be asked even in a case of the plainest privilege. *Treat* v. *Brown*, 4 Conn. R. 408, 418. *Thomas* v. *Newton*, 1 Mood. & Malk. 48, note b. *Southard* v. *Rexford*, 6 Cowen, 254.

On a question of *scienter* you may show other acts, as in passing counterfeit money or bills. Why ? Because in the practised vender of bad coin or bad bills we more readily infer a guilty knowledge than in the novice. 1 Phil. Ev. 179, 7th ed. and the cases there cited. And will you not more readily infer assent in the practised Messalina, in loose attire, than in the reserved and virtuous Lucretia ? Both *knowledge* and *assent* are affections of the mind, and the mode of proving both, rests on the same principle in the philosophy of evidence.

I am fully aware of the two cases of *Rex* v. *Hodgson*, Russ. & Ry. Cr. Cas. 211, and *Rex* v. *Clark*, 2 Stark. R. 241, in which it was held that you shall not be permitted to inquire of the prosecutrix' connection with other men. It is with a view to those cases that I have thought it my duty to consider the question *a priori* ; and I must say that they appear to me entirely anomalous, not only when com-

pared with the cases in respect to circumstantial evidence generally, but with adjudications in respect to evidence receivable on trials for this very crime. It seems, in the first place, to be perfectly agreed that you may prove the prosecutrix to be in fact (not merely by *general reputation*, but *in fact*) a common prostitute; because, say Mr. East and Mr. Roscoe,.that is a proper circumstance to be submitted to the jury. 1 East's C. L. 444, 5. Roscoe's Cr. Ev. 708. It has been repeatedly adjudged that, in the same view, you may also show a previous voluntary connection between the prosecutrix and the prisoner. *Rex* v. *Aspinall*, 2 Stark. Ev. 700. *Rex* v. *Martin*, 6 Carr. & Payne, 562. Why is this? Because there is not·so much probability that a common prostitute or the prisoner's concubine would withhold her assent, as one less depraved; and may I not ask, does not the same probable distinction arise between one who has already submitted herself to the lewd embraces of *another*, and the coy and modest female, severely chaste and instinctively shuddering at the thought of impurity? Shall I be answered that both are equally under the protection of the law? That I admit, and so are the common prostitute and the concubine. If either have in truth been feloniously ravished, the punishment is the same, but the proof is quite different. It requires that stronger evidence be added to the oath of the prosecutrix, in one case than in the other. Shall I be answered that an isolated instance of criminal connection does not make a *common* prostitute? I answer, yes: it only makes a prostitute, and I admit introduces a circumstance into the case of less moment; but the question is not whether it be of more or less *persuasive* force, it is one of *competency;* in other words, whether it be of any force at all.

The decisions of the courts at Westminster Hall are certainly very high evidence of the law. In most cases I agree that we ought to regard them as conclusive; but no court can overrule the law of human nature, which declares that one who has already started on the road of prostitution, would be less reluctant to pursue her way, than another who yet remains at her home of innocence and looks upon such a career with horror. I have long had occasion to know

and to consider much, the two cases cited as adverse to the reception of this evidence ; and I never yet could bring myself to doubt that circumstances much more remote and of less influence are constantly received on the very best authority. Those cases are anomalous in more than one respect. While they reject evidence of the fact, they receive evidence of reputation of the fact, or mere hearsay. They seem to suppose that the testimony was proposed to shake the general credibility of the witness, as if it went to truth and veracity. That is not so. It goes to her credibility in the particular matter, to a circumstance relevant to the case in hand, from which the jury are asked to say she did consent ; and it may be proved by the prosecutrix, or if she deny it, by others. It is most strange that a *reputation* of a want of chastity should be preferred in evidence to *direct proof.* No reason is given for such a distinction by the court ; but the counsel in *Rex* v. *Hodgson* did say, that general reputation alone was to be received, because it was not to be presumed the prosecution would come prepared to meet evidence of the particular fact. Such a reason would go to show that every circumstance in a chain must be shown by reputation instead of occular proof. I am unwilling to deprive prisoners of any evidence sanctioned by authority in this kind of prosecution. Their case is often hard enough. 1 Hale's P. C. 635, 6. But I never yet could see why reputation should be received upon any principle peculiar to such a case. It cannot be, as supposed in *Rex* v. *Clarke,* that the woman's character is in issue, in any other sense than that of every witness, who may be impeached as generally unworthy of credit. The books are certainly strong and uncontradicted that on trying this offence her character as a common strumpet may be proved for such a purpose, *Rex* v. *Barker,* 3 Carr. & Payne, 589, though it is not clearly held to be receivable against a witness in other prosecutions as an impeachment of veracity. There are two decisions in Massachusetts on the question, which conflict ; the first holding that it may, the second that it shall not be received. *Commonwealth* v. *Murphy,* 14 Mass. R. 387. *Idem* v. *Moore,* 3 Pick. 194. Without

expressing an opinion whether it may commonly be used even as an item in the estimate of general credibility, I certainly do not feel clear that it should be repudiated in respect to the prosecutrix, where the trial is for a rape. The strong balance of the books is, that you are never confined in such inquiry to general character for *truth and veracity merely*, but may ask as to the *general moral character*, and stop there. I speak both of English and American cases, which are numerous, and all of which I think I have examined. I do not now remember one which holds that you shall be exactly tied up in your question to character for *truth and veracity*. *Jackson, ex dem. Boyd* v. *Lewis*, 13 Johns. R. 504, says that this is the principal inquiry, and see 2 Sumn. 610, and holds that you shall not, with a view to impeach general credit, show the *particular fact* that the witness was a prostitute. The same thing was held in the late case of *Bakeman* v. *Rose*, 14 Wendell, 105, 110. That is all which the case decides, viz. that you shall not prove *particulars*. It does not hold that the reputation of being a public prostitute shall not enter into an impeaching witness' estimate of general character. There is a discrepancy between the statement of the case and opinion there, which might mislead. The question in the former appears to be one of reputation. The abstract of the case and the opinion of the late chief justice both regard the question as the same with that in 13 Johns. R. 504.* I will merely add a case or two more. In *The People* v. *Mather*, 4 Wendell, 257, 8, Marcy, justice, appears to approve the English form of putting this question as it has long stood in Phillipps,

---

* Since this opinion was delivered, the case of *Bakeman* v. *Rose* has been passed upon in the court for the correction of errors, see 18 Wendell, 146. The case was correctly stated, that the offer at the circuit was to prove the general reputation of the witness as a common prostitute, for the purpose of impeaching her, and the court held that such evidence was inadmissible. It is not, however, said " that the reputation of being a public prostitute shall not enter into an impeaching witness' estimate of general character," and consequently, if the form of inquiry be varied as suggested by SENATOR TRACY, in 18 Wendell, 151 to 153, and by Mr. JUSTICE COWEN, post, the impeachment of the witness will be conclusively effected.

Starkie and Peake, &c. and as it has been, I presume, con-
stantly put at the English nisi prius. In the late case of
Rex v. Bispham, 4 Carr. & Payne, 392, before Garrow, B.,
he put the question in this form: "You have known him
three years. Have you such a knowledge of his general
character and conduct, that you can conscientiously say
that from what you know of him, it is impossible to place
the least reliance on any statement he may make." See
Gass v. Stenson, 2 Sumn. 610, and the cases there cited, that
the question in chancery is the same in form as at law, on
the English authorities. It is, therefore, by no means clear
that the general inquiry as to character for notorious lewd-
ness, mentioned as admissible in Rex v. Clarke, may not,
after all, be traced to the general ground. If such a lati-
tude be allowed any where, it seems to be emphatically
proper in a case of rape. See per Daggett, J., in State v.
De Wolf, 8 Conn. R. 100, 101.

I must with great deference, and on the grounds already
mentioned, be allowed to differ from Mr. Justice Holroyd,
in Rex v. Clarke, when he treats the inquiry into acts of
lewdness, as collateral—saying, that even though you ques-
tion the prosecutrix as to particular facts, you must take her
answer as conclusive. The same idea seems to have been
entertained in Rex v. Hodgson. I have been quite unfor-
tunate, if I have not shown that in this case of rape, the
question is very material in examining the probability of as-
sent; the vital inquiry in the cause. Those authorities are
very severe, and I never could bring myself to act upon
them in their full extent.

Finally, I am glad to see that Westminster Hall has itself
virtually given up both Rex v. Hodgson and Rex v. Clarke,
so far as they deny the pertinency of the particular inquiry.
It was offered in Rex v. Barker, 3 Carr. & Payne, 589, be-
fore Park, J., to ask whether the prosecutrix had not been
seen on the Friday before in a particular place and in par
ticular company, and been guilty of particular conduct and
language, indicating a want of chastity. On the proposition
being made, Park, J., doubted whether since Rex v. Hodg-
son, he could admit proof of particulars; but on conferring

with Mr. Justice J. Parke, they were received with a view to contradict the prosecutrix. This is certainly giving up the point held before, that the questions when addressed to the prosecutrix were collateral, and as such must be concluded by her answer. The prisoner was, after all, convicted; but the case adds in a note, that he was finally pardoned, because the imputations against the witness' character were found to be true. In *Rex* v. *Martin*, 6 Carr. & Payne, 544, before Williams, J., it was proposed to show that before the alleged offence, the prisoner had had intercourse with the prosecutrix by her own consent. The evidence was objected to on the authority of *Rex* v. *Hodgson*, and *Rex* v. *Clark*. The learned judge said, " I was one of the counsel in *Rex* v. *Hodgson*. The question in the present case is, as to previous intercourse with the prisoner; and the question there was as to intercourse with other men. I shall certainly receive the evidence, and I must say that I never could understand the case of *Rex* v. *Hodgson*. The doctrine that you may go into evidence of the bad character of the prosecutrix, and yet not cross-examine as to specific facts, I confess does appear to me to be not quite in strict accordance with the general rules of evidence."

I know not what direction the cause may hereafter take in the court below. Perhaps it may be tried on the assault with intent, &c.; the counts for the rape being abandoned. The rules we have been considering are, as before intimated, equally applicable to the former as to the latter. Indeed, on trying an indictment for a simple assault and battery accompanied with the act of fornication, the same inquiry as to previous acts of lewdness would be receivable; for consent is equally a defence to that. The inquiry would, therefore, be relevant to the main fact in issue.

The proposition to prove character was also proper, and on the same principle it was relevant. The character of the prosecutrix for truth and veracity had already been slightly impeached, when it was proposed to follow that out by showing, that it was also bad several years before. The inquiry is not in its nature limited as to time. The charac-

ALBANY,
January, 1838.

The People
v.
Abbot.

ter of the habitual liar or perjurer seven years since, would go at least to fortify the testimony which should now fix the same character to the same person. Witnesses must speak on this subject in the past tense. Character cannot be brought into court and shown to them at the moment of trial. A long established character for good or for evil, is always more striking and more to be relied on, than that of a day, a month or a year. That former character or conduct alone is quite material, was admitted in *Rex* v. *Clarke*.

But there is another reason why judgment against the defendant must be withheld; or if rendered, that he must be discharged from it. The court below had no jurisdiction of this indictment. 2 R. S. 135, § 5, sub. 2, 2d ed. Id. 552. § 22. Id. 585, § 12. The imprisonment may be for life, on a conviction of rape. Id. 552, § 22. Id. 585, § 12. To warrant a trial at the sessions, the district attorney should have entered a *nolle prosequi* on the numerous counts for the rape. The issue tried here was general on all the counts, the jury and witnesses were sworn, and the verdict rendered on that issue. The whole was *coram non judice*, and void. Not a witness could be indicted for perjury; nor could any effectual judgment be rendered, or execution issued.

I know not to what extent the evidence was intended to be placed before us. There is vastly more in the bill of exceptions than was necessary to raise the points of law proposed by counsel. I will only say, that if the district attorney should think he cannot make more of the case than what we are able to see, he had better not try this man again upon the present indictment. I should very much doubt on the evidence, whether he has been guilty even of a simple assault and battery. Upon that matter, however, we cannot advise finally, for want of knowing what there may be left out of the case. It is our proper province merely to pronounce on the questions of law.

There must at least be a re-trial, if we may be allowed so to speak in a case where there has, as yet, been no trial at all; and if the counts for the rape be not abandoned, the cause must be tried by the oyer and terminer.