JAMES BRENNAN, PLAINTIFF IN ERROR, v. THE PEOPLE
OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Rape — evidence — admissibility of, as to character of complainant in prosecution for.*

On a trial for rape, evidence that the complainant was a woman of drunken
and dissipated habits, sleeping generally in the hall-ways of a tenement house,
and accustomed to go in at two or three o'clock in the morning, is admissible as
evidence in itself, of general immoral character, and within the principle of
*Woods* v. *The People* (55 N. Y., 515).

The complainant testified on cross-examination, that she did not go with a man
to a liquor shop and afterward accompany him to a lumber yard, and endeavor
to get him to have carnal intercourse with her. *Held,* that it was material to the
question of the character of the witness for truth and morality, and that it was
error to exclude evidence establishing such facts.

WRIT of error to the Sessions, to correct the conviction of the
plaintiff in error of rape.

*William F. Howe,* for the plaintiff in error.

*Benjamin K. Phelps,* district attorney, for the defendants in
error.

BRADY, J. :

The plaintiff in error, Brennan, was convicted of the offense
of rape and sentenced to ten years in the State prison. He was
one of six persons engaged in the commission of the offense, only
one of whom, but not he, had sexual intercourse with the com-
plainant. He was about twenty years old when convicted, and she
was about seventeen when the alleged outrage was perpetrated.
The facts and circumstances, which were stated by Judge SUTHER-
LAND in his charge, were peculiar, if not extraordinary. The
intercourse took place behind a pile of lumber, to which the prose-
cutrix, she said, was dragged by Brennan and the others. He
then took the rings off her fingers with his teeth and keeping his
hand on her mouth, two of the others held her by the feet, and
two more held her by the arms, while Lane, also convicted, rav-
ished her. Brennan did not seek to assault her otherwise than

as stated, and would seem, assuming her statement to be true, to have been assisting Lane to accomplish a guilty purpose. We are thus advised of the precise situation of the six persons who surrounded her, and dragged her to the place where the offense was committed. There was evidence tending to show, that on the afternoon of, and a short time before the alleged wrong, she was sitting near the lumber with a man unknown, between whom and her there were exchanges of affectionate embrace, after which, both were seen to retire behind the lumber or between the piles of lumber, in the vicinity of where they were seated. The learned judge, in charging the jury, gave the plaintiff in error all the advantage in the statement of the rules of law on the subject which would ensue from proof that the complainant was a prostitute, but at the same time, he presented with much force and emphasis the truthful and just proposition, that a woman of bad character might be assailed and outraged by the offense for which the prisoner stood charged. It may be said perhaps, with propriety, that this legal conclusion was made so prominent as to overshadow, if not to overcome the just inferences which might be drawn from the character of the complainant, if found to be bad, that she would not refuse to permit voluntarily, what she alleged to have been forcibly accomplished. There was no. direct evidence that she allowed sexual intercourse with her, but an array of facts and circumstances was made, from which it might be determined that she had done so, the most important of which was, that she was seen under suspicious circumstances with an unknown man in the vicinity of the piles of lumber. The question whether she was the person thus seen, necessarily depended upon satisfactory proof of her identity, and the persons testifying on the subject had only seen her from a distance, and described her by her dress and general appearance only. On the trial, however, the plaintiff in error offered to show, by a witness on the stand, that the complainant was a woman of drunken and dissipated habits, sleeping, generally, in the hall-way of a tenement house, and accustomed to go in there at two or three o'clock in the morning. This was excluded and exception taken, the court stating that it was not meant to exclude proof of her general reputation for truth and veracity, or any other evidence as to her moral character. The plaintiff in error was confined, therefore, to proof

as to general character for morals, truth and veracity, and prevented from showing particular acts which it would seem were, in themselves, evidence of general immoral character. The plaintiff in error also offered to show, by a witness then on the stand, as follows : " Counsel — I offer to show, now, by Mr. McCarten, that on the day in question, the fifth day of September, he met this complainant in the street ; that he gave her a chew of tobacco ; that she went to a liquor saloon with him in the vicinity, drank liquor with him in Myers' place, in Forty-ninth street and First avenue ; after which she accompanied him to the lumber yard — to the very lumber yard — and endeavored to get this man to have carnal intercourse with her," which offer was excluded and exception noted. The first offer, as to the dissipated habits of the complainant, seems to be within the principle or doctrine of *Woods* v. *The People* (55 N. Y. Rep., 515). The fair inference to be drawn from such conduct was, that she was a dissipated and immoral woman, ready for any form of immorality, whether of sexual intercourse or otherwise, which might be demanded of her. Such conduct is not consistent with a virtuous life, and marks the existence and progress of moral depravity. If the legitimate conclusions to be drawn from general conduct, are such as to warrant the particular charge made, evidence of general conduct should be received in such a case as this, for that purpose, although each act of such conduct, considered by itself, would be proof of a particular fact. The offer made in the case cited was not to show the general reputation of the complainant, but that she was in the habit of receiving men for promiscuous intercourse, and especially for liquor. This evidence, the court said, was competent, not for the purpose of impeaching the general credibility of the witness, but upon the question whether she assented to the intercourse with the prisoner. The offer to show by McCarten what has been stated was, in part, for the purpose of contradicting the complainant. She was asked whether she did not go with him to a liquor shop and drink ; and whether she did not go to the lumber yard with him, and she answered no to each inquiry. It was objected that the cross-examination, in this respect, was upon matters immaterial to the issue, and that there could be no contradiction of the replies. This view of the question was erroneous. (*The People* v. *Abbot*, 19 Wend.,

192.) The issue involved the character of the prosecutrix for truth and veracity, morality and chastity, not because though she were ever so bad she might not be outraged, but because the presumptions in such prosecution as· this, against the necessity of employing force, must exist when the character of the person assailed is shown to be immoral and wicked. This view is sustained by the case of *Wood* v. *The People* and *The People* v. *Abbot* (*supra*), and is to be *eliminated* from all elementary books on criminal law. This evidence was important, not only as affecting the veracity of the complainant, but her character for virtue. It supplied, in effect, the proof of identity, which was in doubt upon the subject of whether she was seen in the vicinity of the lumber on the day the rape was alleged to have been committed, and proved that she solicited a man to have intercourse with her. Any fact tending to the inference, that there was not the utmost relucrance and the utmost resistance is always received. (*The People* v. *Abbot, supra ;* approved, *People* v. *Dohring*, 59 N. Y., 383.) This testimony, coupled with the offer to show her habits of life, established connecting links which could leave no doubt of her general character. It was of great importance to Brennan, because, as said by the learned judge. in his charge, " as to Brennan there is no evidence in this case except that of the girl, that he was one of the five that ran. His identity as one of those who committed the assault rests entirely upon her testimony." Whatever lessened the weight of that testimony should have been received, if within the recognized and liberal rules of law applicable to a defense on a charge of rape. The good character shown by the accused, together with the doubt the excluded evidence might have created, if admitted, we cannot say would not have operated, to secure his liberation. The combination would have been a strong one, unless overcome by evidence as to which we cannot speculate. The defense was limited to lines too tightly drawn, and the plaintiff in error held to a regimen of proof, too strict for prosecutions like this, which, while abhorrent in character, have been often trumped up for security from disgrace, or to accomplish some evil design. I think that the evidence of McCarten was also admissible as independent proof of a criminal act on the part of the prosecutrix, which had a legitimate bearing upon the issue presented, and rest on the authority of *The People*

*v. Abbot* (19 Wend., 192, *supra*), as an able, philosophical and just exposition of the law on that subject, applicable to cases of this class. The punishment for the offense is severe, and it should be, but the investigation of the charge should be full, fair, impartial and liberal, especially when there is reason to believe that the prosecutrix is unchaste. I think the judgment should be reversed.

DAVIS, P. J., concurred in the result.

DANIELS, J., concurred, on the ground that the offer of evidence first made should have been received.

Judgment reversed, new trial ordered.