## THE STATE v. DONNELLY.

69  705
89  187

1. **Homicide**: SELF-DEFENSE: DUTY TO RETREAT. It is a general rule of law that, where one is assaulted by another, it is the duty of the person assaulted to retire to what is termed in the law a wall or a ditch, before he is justified in repelling such assault by taking the life of his assailant. But cases frequently arise where the assault is made with a dangerous or deadly weapon, and in so fierce a manner as not to allow the party thus assaulted to retire without manifest danger to his life, or of great bodily injury; and in such cases he is not required to retreat.

2. ———: ———: BELIEF OF DEFENDANT AS TO HIS DANGER. An instruction to the effect that, if the decedent assa led the defendant with a deadly weapon in such a fierce manner as to create in the mind of the defendant, acting as a reasonably prudent man would act under the circumstances, a belief, *and he did believe*, that the decedent intended to take his life, or inflict upon him some great bodily injury, and in such belief he fired the fatal shot, *held* not erroneous on account of the use of the words in Italics.

3. **Criminal Procedure**: MEAGER INSTRUCTIONS. A judgment of conviction will not be reversed on account of the meagerness of the instructions, where fuller instructions were not asked by defendant, and the instructions which appellant claims should have been given are logically implied in the instructions given.

4. **Homicide**: EVIDENCE: DECLARATIONS OF DECEDENT. Declarations of the decedent, in case of homicide, when admissible, must be confined to statements of fact, and his statement as to defendant's purpose was properly excluded.

5. ———: SELF-DEFENSE: POWER TO ESCAPE: EVIDENCE: OPINION. The defendant, as a witness, was asked: "State whether or not you could have passed around the logs that projected from the corner of the house at the time you discharged the gun, with your father (the decedent) in the position he then was, without coming in reach of the fork he had in his hand." *Held* properly excluded as calling for the opinion of the witness.

*Appeal from Buchanan District Court.*

SATURDAY, MARCH 20, 1886.

THE defendant was indicted for the crime of murder in the first degree, and was found guilty of manslaughter, and sen-

tenced to imprisonment for fifteen months. He appeals to this court.

Horace Boies and J. J. Ney, for appellant.

A. J. Baker, Attorney-general, for the State.

ADAMS, CH. J.—I. The defendant shot his father, Patrick Donnelly, with a shot-gun, causing a wound **1. HOMICIDE: self-defense: duty to flee.** of which he died about two days afterwards. The deceased had become very angry with the defendant, and, at time of the firing of the fatal sl ct, was pursuing the defendant with a pitchfork, and the circumstances were such that we think that the jury might have believed that he intended to take the life of the defendant. On the other hand, the circumstances were such that we think that the jury might have believed that the defendant could have escaped, and fully protected himself by retreating, and that he had reasonable ground for so thinking.

The court gave an instruction in these words: "You are instructed that it is a general rule of the law that, where one is assaulted by another, it is the duty of the person thus assaulted to retire to what is termed in the law a wall or ditch, before he is justified in repelling such assault in taking the life of his assailant. But cases frequently arise where the assault is made with a dangerous or deadly weapon, and in so fierce a manner as not to allow the party thus assaulted to retire without manifest danger to his life, or of great bodily injury; in such cases he is not required to retreat." The defendant assigns the giving of this instruction as error. He contends that the court misstated the law in holding, by implication, that he is excused from doing so only where it would manifestly be dangerous to attempt it. His position is that the assailed is under obligation to retreat only where the assault is not felonious, and that, where it is felonious, as the evidence tends to show in this case, he may stand his

groun'l, and kill his assailant, whatever his means of retreat and escapo might be, provided only he had reasonable cause for believing that if he stood his ground, and did not kill his assailant, his assailant would kill him, or inflict a great bodily injury. Under this theory and the evidence, the jury might have found that the defendant was justified in killing his father, and that, too, even though there had been other evidence showing that his father was so old and decrepid that the defendant could have escaped him by simply walking away from him. It is perhaps not to be denied that the defendant's theory finds some support in text-books and decisions. But, in our opinion, it cannot be approved. This court has, to be sure, held that a person assailed in his own house is not bound to retreat, though by doing so he might manifestly secure his safety. *State v. Middleham*, 62 Iowa, 150. While there is some ground for contending that the rule does not fully accord with the sacredness which in later years is attached to human life, the course of decisions appeared to be such as not to justify a departure from it. The rule for which the defendant contends seems, so far as it finds support in the authorities, to be based upon the idea that, where a person attempts to commit a felony, it is justifiable to take the offender's life if that is the only way in which he can be prevented from consummating the felony attempted. But where a person is assailed by another who attempts to take his life, or inflict great bodily injury, and the assailed can manifestly secure safety by retreating, then it is not necessary to take the life of the assailant to prevent the consummation of the felony attempted. In Roscoe, Crim. Ev., 768, note, the annotator says: " When a man expects to be attacked, the right to defend himself does not arise until he has done everything to avoid that necessity;" citing *People v. Sullivan*, 7 N. Y., 396; *Mitchell v. State*, 22 Ga., 211; *Lyon v. State*, Id., 399; *Cotton v. State*, 31 Miss., 504; *People v. Hurley*, 8 Cal., 390; *State v. Thompson*, 9 Iowa, 188; *U. S. v. Mingo*, 2 Curt., 1. In our opinion, the court did not err in giving the instruction in question.

II. The court gave an instruction in these words: " If the said Patrick Donnelly first assaulted the defendant with a dangerous or deadly weapon, and such assault was made in such a fierce manner as to create in the mind of the defendant, acting as a reasonably prudent man would act under the circumstances, a belief, and he did believe, that said Patrick Donnelly intended to take his life, or inflict upon him some great bodily injury, and in such belief he fired the shot in resistance of such assault, from the effect of which the said Patrick Donnelly died, he was justified in so doing, and you should acquit the defendant." The giving of this instruction is assigned as error. The complaint is that the instruction carries an implication that the defendant was not justified unless he *believed* that the deceased intended to take his life, etc. The rule, as generally stated, is that the defendant must have reasonable ground to believe. But practically it appears to us that there is no material difference, so far as the defendant's rights were concerned, between the rule thus stated and the rule as given. It must be assumed that what a person has reasonable ground to believe he does believe, and, conversly, that for what he does not believe there is, to his mind, for some reason, a lack of reasonable ground for believing.

2. ——: ——: belief of defendant as to his danger.

III. The defendant contends that there was evidence tending to show that he did not know that the gun was loaded, nor have reason to suppose that it was, and that the killing was not intended, but was accidental; and he complains that the court erred in not instructing the jury in respect to the law of accidental killing. It may be that the court might properly have more fully instructed the jury upon this point; but, in the absence of any request to instruct, we do not think that the defendant has any ground for complaint. The court instructed the jury that the burden was upon the state to prove beyond a reasonable doubt that the killing was

3. CRIMINAL procedure: meager instructions.

felonious.    Under that instruction the jury must have found a felonious intent.    The evidence of the accidental character of the killing, so far as. it was relied upon to justify an acquital, must have been considered under that instruction.

IV.    Two questions are raised upon the exclusion of evidence.    When one Dr. Grath was on the stand, he was asked, after testifying to the character of the wound, whether the deceased said anything to him in regard to who inflicted the injury, and whether it was purposely done or not.    Upon objection being made by the state to the question, the court excluded it.   It is claimed that it was competent to show the statement of the deceased as to the defendant's purpose.   But if any statement of the deceased had been admissible, it should have been in regard to facts.    The defendant's purpose was not known to the deceased except by reason of something said or done.

*4. HOMICIDE: evidence: declaration of decedent.*

When the defendant was a witness upon the stand, he was asked by his counsel a question in these words: "State whether or not you could have passed around the logs that projected from the corner of the house at the time you discharged the gun, with your father in the position he then was, without coming in reach of the fork that he had in his hands."    The court, upon objection by the state, excluded the question.    It appears to us that this question, like the other, called for an inference or opinion, and was objectionable.

*5. ——: self-defense: power to escape: evidence: opinion.*

We have examined the entire case, and discover no error.

AFFIRMED.