## Court of Appeals.

### October 1886.

## Supreme Court—General Term—Fourth Department.

### July, 1886.

## PEOPLE v. DRUSE.

### MURDER—EVIDENCE—CONFESSION.

After a witness has gone through the whole narrative of a transaction and stated generally all he remembers of it, the court may allow his attention to be directed to particular facts and conversations comprised therein and relating thereto.

After evidence has been given tending to show that a homicide was committed in self-defense defendant can follow it by proof of general reputation of quarrelsomeness and violence of the deceased, but cannot give in evidence specific acts of deceased of violence towards third persons or of cruelty to domestic animals.

A voluntary confession otherwise admissible is not rendered inadmissible by

the fact that it was made by a person then under arrest at the time it was made.

Upon a trial for homicide evidence that deceased robbed his father when in his coffin of his grave clothes and wore them at the funeral is inadmissible to show the character of deceased.

(By the Supreme Court General Term).

No particular time is prescribed by law within which deliberation and premeditation must occur to constitute murder in the first degree. The act which caused the death must be deliberate in the sense that it was not committed under the influence of a sudden and uncontrollable impulse produced by a proximate cause and it must be premeditated in the sense that an intention to inflict the injury must have preceded the doing of the act.

If the time is long enough for reflection, for choice to kill or not to kill and for the formation of the purpose to kill, that is sufficient.

Under section 527 of the Code of Criminal Procedure the Supreme Court on appeal may order a new trial in a criminal case if in any aspect of the case error was committed on the trial, and on such appeal this section has abrogated the narrow and technical rules in respect to criminal cases.

It is the province of the jury to determine questions of fact arising upon the evidence and the intent of the prisoner, and it is the duty of the appellate court to accept the verdict in that regard as delivered by the jury.

Where a person is assailed by another who attempts to take his life or inflict great bodily injury and the assailed can secure safety by retreat, then it is not necessary to take the life of the assailant to prevent the consummation of the felony attempted.

An alleged actor in a crime, who consents to become a witness subjects himself to the same rules and tests that are applicable to other witnesses. Conversations and declarations of a witness inconsistent with his testimony in chief and relating to material issues may be introduced in evidence to contradict him.

Comments by the trial judge as to the force and effect of evidence furnish no ground for reversal where the jury was left to weigh the evidence and instructed to determine all the facts arising thereupon.

A verdict will not be disturbed because the clerk's minutes do not show the whole proceeding in regard to drawing the jury where no prejudice or irregularity in that regard operating to the injury of the defendant is shown by the record.

The verdict of the jury in a criminal case will not be set aside for irregularity or improper conduct on the part of jurors, unless it is shown that the defendant was prejudiced thereby.

APPEAL by defendant Roxalana Druse from a judgment of the General Term of the Supreme Court in the Fourth Department of July 1, 1886, affirming a judgment of the

Court of Oyer and Terminer of Herkimer County of October 6, 1885, convicting her of murder in the first degree.

The facts fully appear in the opinions of the General Term and the Court of Appeals.

*H. D. Luce*, attorney, *A. H. Prescott*, counsel for defendant. appellant.

*Eugene E. Sheldon*, district attorney for the people, respondents.

The following is the opinion rendered by the General Term.

HARDIN, P. J.—From the evidence given upon the trial it appears that on the 18th day of December, 1884, the appellant and William Druse, at the town of Warren, were living together as husband and wife, and that their family at that time consisted of their daughter, Mary Druse, aged some nineteen years, and their son, George Druse, who was about ten years old, and Frank Gates, a nephew.

While the husband and wife were at the breakfast table on that day an altercation arose, and after the deceased had received a shot from a pistol in the hands of the appellant, she seized an axe and struck him on the head with it, and continued in the use of the axe until she had severed his head from his body. She then rolled up the head in a newspaper or skirt, and carried it into the parlor. With the aid of Frank Gates and George Druse, the body was taken into the parlor upon a straw tick. From the evidence it also appears that the house was closed and the windows were darkened, and the body was severed into pieces and placed in stoves and consumed, and efforts made to obliterate traces of the crime, which did not become known in the neighborhood until the early days of January, when the appellant and those in and about the house at the time of the commission of the crime were arrested and criminal proceedings instituted against them. At the close of the evidence the learned judge presiding at the trial, in a careful and extensive charge to the jury, submitted to them to inquire upon the evidence taken upon the trial, among other things, whether William

Druse came to his death on the 18th day of December, at the town of Warren, and whether he came to his death by the act or procurement of the appellant, and if so, whether the homicide committed by the defendant was a crime, and if a crime, what crime was it.   After a careful definition of the crime of murder in the first degree and murder in the second degree, the attention of the jury was directed to the law in respect to justifiable homicide, and the court instructed the jury as follows : " Homicide is also justifiable when committed either, first, in the lawful defense of the slayer, when there is reasonable ground to apprehend a design on the part of the person slain to do some great personal injury to the slayer, and there is imminent danger of such design being accomplished, or, second, in the actual resistance to an attempt to commit a felony upon the slayer," and he added " These words define what is known in common parlance as ' self-defense ' : This calls upon you to examine the evidence carefully and fully with a view to determining whether this homicide was committed by defendant in ' self-defense.'   The theory or claim of the people is that she attacked and killed him, without any justifiable cause.   The theory of the defendant is that she had reasonable ground to apprehend a design on the part of her husband to do her some great personal injury, and there was imminent danger of the design being accomplished, or that she killed him in the actual resistance of an attempt by him to do her such injury.   You are to determine what the real fact was, and determine it from this evidence."

After looking into the evidence given upon the trial in behalf of the people, as well as the evidence offered in behalf of the accused, we are of the opinion that the evidence warranted the submission to the jury of the questions of the fact which were indicated by the trial judge, and that the evidence which was delivered before the jury warranted the instruction relating to the crime of murder in the first degree.

We think the trial judge properly submitted to the jury the inquiry as to whether all the ingredients were shown by the evidence which constitute the crime of murder in the first

degree. While commenting upon that crime to the jury, the learned judge said, " In order to constitute murder in either degree there must exist a design to effect the death of the person killed. If this design does not exist then the killing cannot be murder, though it still may be manslaughter. There must be, in order to establish the crime of murder in the first degree, deliberation and premeditation. No particular time is prescribed within which these operations of the mind must occur. It is sufficient if their exercise was accomplished when the deed was done resulting in the death ; it is enough if there was time for the mind to think upon, to consider the act of killing, to meditate upon it, to weigh it, and then to determine to do it."

" Such design must precede the killing by some appreciable space of time. It need not be long, but it must be sufficient for some reflection upon the matter, for choice to kill or not to kill, and for the formation of the purpose to kill, and when the time is sufficient for this purpose it does not matter what the length of time is. Whether a deliberate and premeditated design to kill was formed must be determined from the facts and circumstances of the case. The act which caused the death must be deliberate, in the sense that it was not committed under the influence of a sudden and uncontrollable impulse, produced by a proximate cause ; and it must be premeditated in the sense that an intention to inflict the injury must have preceded the doing of the act."

" Upon this evidence, gentlemen, it is a question for you whether the killing in this case—if you shall not find it to have been excusable or justifiable—was (first)with the design to effect death ; (second) whether it was done with deliberation and premeditation ? If there was not an intent or design to effect the death, then it was not murder at all. If there was a deliberate and premeditated design to kill, and it was not excusable or justifiable, then it was murder in the first degree."

During or at the close of this charge there was no exception thereto.

Our attention is called to section 527 of the Code of Criminal Procedure which provides that this court may order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence, or against law, or that justice requires a new trial, "whether any exception shall have been taken or not in the court below."

In *People* v. *Williams*, 29 Hun., 525 ; 1 N. Y. Crim., 336 ; this court said by one of its present members, in speaking of this section, viz : " Our impression is that it was the design of the legislature by this provision of law to allow the appellate court to order a new trial, if in any aspect of the case error was committed in the progress of the trial, and that the narrow and technical rules in respect to the exactitude of exceptions, was abrogated in respect to this class of cases. We must, therefore, look into the proceedings upon the trial to discover whether any error has occurred ; and if such error is found, we must declare the error, and allow it to produce a new trial ' whether any exception shall have been taken or not in the court below,' sufficient to formally and directly raise the question of alleged error or not under the previous strict and technical rules."

That section was referred to in the *People* v. *McGloin*, 91 N. Y., 249 ; 1 N. Y. Crim. 154, and a similar interpretation was given to it as applicable to a review in this court.

The section has been referred to in the *People* v. *Hovey*, 92 N. Y., 554 ; 1 N. Y. Crim. 283, where it is said the section applies to this court, but not to the court of appeals, which will only review where exceptions to alleged error have been taken during the progress of the trial. *People* v. *Boas*, 92 N. Y., 560 ; 1 N. Y. Crim. 287. *People* v. *D'Argencour*, 95 N. Y., 631, 2 N. Y. Crim. 267. *People* v. *Guidici*, 100 N. Y., 508, 3 N. Y. Crim. 551.

We must proceed, therefore, in determining the appeal now before us, to consider the proceedings had upon the trial, and while doing so exercise all the powers conferred upon this court by the section of the code of criminal procedure to which we have referred.

First. We are of the opinion, as already stated, that whether or not the defendant was guilty of the crime of murder in the first degree, was to be determined as a question of fact by the jury upon all the evidence given upon the trial. Whatever might be our impressions, had we been sitting as jurors in the case, we are entirely satisfied that the evidence offered before the jury upon this question warranted the conclusion reached by the jury. We are not at liberty, therefore, to interpose against the verdict, any speculative conclusions or opinions which we might have were the evidence before us for consideration in the first instance. It is our duty to accept the verdict in that regard as delivered by the jury. " It is the province of the jury to determine questions of fact arising upon the evidence, and the intent of the prisoner." Andrews, J.—*Foster* v. *People* 50 N. Y., 598.

Second. We are of the opinion that the trial judge applied the proper rule of law in respect to the alleged defence of justifiable homicide, and called the attention of the jury to all the evidence bearing upon that question, after laying down the rule of law applicable thereto. The charge, in that regard, accords with the authorities. *People* v. *Schryver*, 42 N. Y., 1; *People* v. *Kelly*, 94 N. Y., 533.

In a recent case it has been held, viz : " Where a person is assailed by another who attempts to take his life, or inflict great bodily injury, and the assailed can manifestly secure safety by retreating, then it is not necessary to take the life of the assailant to prevent the consummation of the felony attempted." *State* v. *Donnelly*, (Iowa Supreme Court, March, 1886,) 69 Iowa, 705.

We are not at liberty to interfere with the verdict of the jury finding against the defence interposed of justifiable homicide.

Frank Gates and George Druse were called as witnesses in behalf of the people, and gave evidence in respect to the details of the homicide, and what occurred in and about the house in the presence of the accused at the time and succeeding the death of William Druse. In the narration of what

occurred and of what they saw on that occasion they used, in some instances, general words of description of the events, in their statements of what occurred. To the language employed by the witnesses numerous objections and exceptions were taken, and to the rulings admitting the same. We have looked carefully into all the rulings made in respect to the description of the scenes and events at the house on the occasion of the homicide, and we are of the opinion that the trial judge cautiously and carefully excluded all opinions from the witnesses, confining them to a narration of what took place in their presence and what was observed by them on the occasion of the homicide. In the course of the testimony of Frank Gates, the witness said: "Mrs. Druse took the axe and hit Mr. Druse on the head with it, and he said, 'Oh! Roxey, don't!' Then she hit him again." Q. "Then what?" A. "Then she chopped his head off."

To that answer the counsel for the defendant objected and moved to strike it out, "on the ground that the striking or doing anything with any instrument is an act, and it involves some action, to take hold of an axe and do something with it. I want just what was done described." Thereupon the court remarked: "He may describe this;" and the district attorney propounded the question next, "What was done?" To that question the defendant's counsel interrogatively says, "Is that retained?" Thereafter the court remarked, "I will see after he has described. He may describe, particularly what he meant, how it was done." Thereupon the district attorney propounded his question again, "Describe how it was done. Where was Mr. Druse?" The witness answered "He lay on the floor." The court then inquired, "What did she do with the axe?" A. "Hit him on the head with it." Thereupon the defendant's counsel objected to the answer and the objection was overruled, and an exception was taken. The witness answered, "There was blood on the back of his neck and on the floor. I saw him blowing blood out of his mouth and nose."

The court then asked, "What did you notice with refer-

ence to his breathing ? "   The defendant's counsel objected
to that and the court remarked, " He must not give an opin-
ion, but simply state. what he saw," and overruled the objec-
tion.   The witness answered, " His head was near the stove
hearth ; then she hit him on the head."   The next question
was, " Then what ? "   The witness answered, " Chopped his
head off, rolled it up in a newspaper and carried it into the
parlor, and sent me and George up-stairs."   Thereupon the
defendant's counsel objected to the answer, and the court re-
marked, " What did she say about going up-stairs ? "   The
witness replied, " She said, ' go up-stairs and get the straw
tick.' ".

We think the court was sufficiently careful and cautious
in confining the statement of this witness to the actual facts
observed and to the proper characterization of them when re-
lating them to the jury, and we have looked into the testi-
mony of the witness George Druse, and while we find some
similar objections and answers to the questions propounded,
we are of the opinion that the rulings made in the admission
of the testimony of these two witnesses were correct.   *People*
v. *Gonzales*, 35 N. Y., 49 ; *People* v. *Greenfield*, 23 Hun.,
456, affirmed, 85 N. Y., 75.

After the witnesses had narrated some of the conversations,
and had stated generally all that they remembered in respect
to them, the learned trial judge permitted the examining
counsel to direct their attention to particular facts or particu-
lar conversations, and phrases used in conversation, and also
allowed them to be interrogated in respect to such particulars.
We are of the opinion that the rulings are within the rule
prescribed for the examination of witnesses under similar cir-
cumstances.

Third.   Newton Armstrong was called as a witness in behalf
of the people, and testified that on Monday, the 15th of
January, 1885, in Mr. Eckler's kitchen chamber, he held a
conversation with the defendant with reference to her hus-
band, and that no one else was present.   He adds . " I told
her I thought she had better tell me what she had done with

William. I think I told her it would be better for her to tell me about it. I then had her in my charge. I knew Mr. Luce, her counsel, had told her not to tell." Thereupon the defendant's counsel objected to the witness's answer and the court declined to take the witness's testimony on that subject at that stage of the case. No other ruling was made then. No error was committed there of which the defendant can complain.

Subsequently Daniel McDonald, a witness in behalf of the people, testified that he was at Eckler's on the night of the 15th day of January, and saw the defendant and that he had a conversation with her. The witness testified, viz: " I didn't tell her she had better tell what there was of it, it would be better for her; I did not tell her anything on that subject; I wouldn't say whether I was asked to talk with her about it by any one or not; I think not, though : I did not threaten her if she did not tell, not at any time; I am sure of that; I didn't hear any one else threaten her.   \*   \*   \*   I could not tell how many conversations I had with Mrs. Druse in all; perhaps three or four. At the time I had the first conversation with her I said to her that George and Frank and Mary had told us all about it, and she might as well tell us too; I didn't add that it would be better for her; I think I didn't say anything further. The reason that I told her that George and Mary and Frank had told all about it, was that before she had talked of her own accord and said she hadn't any hand in it, for what she was arrested, and denied it at the time, and I told all about it."

The defendant's counsel objected to the conversation held by the witness with the defendant on the ground, first, because it was made while defendant was under arrest, and second, the statement that Frank, Mary and George had told all about this transaction, was an inducement for her to tell, was unfair, unjust, and the very evidence he states was calculated to lead her to believe that it would be best; would be a favor to her to tell. The objections were overruled, and an exception taken, and the witness was allowed to give the

admissions and declarations of the defendant made to him on the occasion spoken of.

We are of the opinion that the ruling made by the trial judge in receiving the evidence was in accordance with the statute and the authorities interpreting it.

Section 395 of the Code of Criminal Procedure expressly provides, " The confession of a defendant in the course of judicial proceedings, or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney, &c."

That section cautiously provides that such confession " is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed."

We are of the opinion that when the evidence was received there was nothing before the court to indicate that the declarations or confessions of the defendant had been delivered to the witness " under the influence of fear produced by threats, or upon any stipulation given by the district attorney." *Cox* v. *People*, 80 N. Y., 515. *People* v. *Wentz*, 37 N. Y., 309. *People* v. *McGloin*, 91 N. Y., 241 ; 1 N. Y., Crim., 154.

There was no conflict in the evidence as to what occurred at the time the confession was made, or the conversation held with the defendant. It was, therefore, a question of law as to whether or not the confessions were receivable. *Willett* v. *People*, 27 Hun, 469, and cases cited in the opinion of Boardman, J., at p. 474. See also *Murphy* v. *People*, 63 N. Y., 591 ; *People* v. *Mondon*, 4 N.Y., Crim., 112 ; 38 Hun., 188.

Fourth. There is no force in the objection that the confession was made while the defendant was under arrest: nor do we know of any distinction in favor of the defendant because of the fact that she was a female. Nor do we think the circumstance that McDonald had remarked to her that George, Mary and Frank had " told all about it," sufficient to exclude the testimony.

In the *People* v. *Wentz*, *supra*, Davies, Ch. J. says, " a confession is admissible, although it is elicited in answer to a

question which assumes the prisoner's guilt, or is obtained by artifice or deception." In the same case at page 309, Grover, J., says, " the inquiry always is, was the confession made under circumstances making it reliable for truth? and if so, it is admissible, irrespective of the means by which it was obtained."

We are of the opinion that section 395 of the Code of Criminal Procedure was observed when the confession or declarations of the defendant were received in evidence.

This case is unlike *People* v. *Mondon,* as the confession there was obtained in the course of proceedings before the coroner.

Fifth. We think no error was committed in not allowing Mary Druse to testify what William Elwood had told her had become of her father's body. William Elwood was not sworn as a witness by either side; his declarations were incompetent, made several days after the homicide. Nor was any error committed in respect to her cross examination as to what she was arrested for. She first testified that she knew what she was arrested for, and upon the question being put to her again as to whether she understood what she was arrested for, her answer was, " I don't know."

Nor in allowing the question to be put to her as to what she said to Petit. Her answer was, "I don't recollect." Nor in allowing her to testify that she had no conversation with Newburn Armstrong at Eckles's, on the night she was arrested.

Nor what she said to Dr. Suiter as to what she did on the occasion of the homicide. *Great Western Turnpike Co.,* v. *Loomis,* 32 N. Y., 127; *Shepard* v. *Parker,* 36 N. Y., 518; *White* v. *McLean,* 48 How. 198; *King* v. *N. Y. Central R. R. Co.,* 72 N. Y., 610.

We have looked at the many other rulings in occurring the course of her examination, and we are of the opinion that the trial judge did not commit any error, or abuse his discretion in respect to the latitude he allowed in the cross examination of this witness.

By consenting to be a witness, although an alleged actor in the crime, she subjected herself " to the same rules and tests applicable to other witnesses." *Connors* v. *People*, 50 N. Y., 240.

We think no error was committed in allowing the witnesses Newburn Armstrong, Phoebe Chamberlain, Daniel McDonald, Clarence Marshall and Irving Nellis to testify in respect to conversations or declarations of Mary Druse, inconsistent with her testimony given in chief. The contradictions asked for from the witnesses related to material issue, and, therefore, it was allowable to contradict the witness. *Lee* v. *Chadsey*, 2 Keyes, 553 ; *Wilder* v. *Peabody*, 21 Hun., 377.

It was not error to refuse to receive evidence of specific acts of the deceased of cruelty to his animals. His general character for violence was admissible, and properly received according to the rule laid down in *Nichols* v. *People*, 23 Hun., 165.

We think no error was committed by the trial judge in commenting upon the force and effect of defendant's admissions, nor in indicating an opinion as to her knowledge of the facts stated by her at the time such confessions were made. The jury was left to weigh the evidence, and instructed and authorized to determine all the facts arising upon the evidence. In *Jackson* v. *Timmerman*, 12 Wend., 301, Sutherland, J., said, " There was no error in point of law in the charge, and the judge's comments upon the evidence though strongly indicating an opinion against the defendant, afford no ground for granting a new trial." In *Nolton* v. *Moses*, 3 Barb., 34, it is said if a judge " gives an opinion upon the evidence it cannot be reviewed upon exceptions." See also 42 Barb., 27.

We cannot disturb the verdict, because the clerk's minutes do not show the whole proceeding in regard to drawing the jury. If there was any prejudice or irregularity in that regard it should have been shown by the record.

" Mere irregularities in the drawing of a grand jury and petit jurors do not furnish a ground for reversing a conviction, unless it appears that they operated to the injury or prejudice of the prisoner." *Cox* v. *People*, 80 N. Y., 500.

Nor are we at liberty to reverse the judgment because it does not appear therein that the defendant was asked what she had to say why judgment should not be pronounced at tha time sentence was given. That inquiry appears by the clerk's minutes of the trial, to have been made of her in accordance with section 480 of the Code of Criminal Procedure.

We have carefully examined the entire course of the trial, and considered all the points of alleged error found in the elaborate argument of the leaned counsel for the appellant, and have reached the conslusion that no error prejudicial to the defendant was committed. *People* v. *Gonzales*, 35 N. Y., 49, Code of Criminal Procedure, § 542.

Upon a full and careful consideration of the evidence relating to the offense, and the defense, the jury have determined the questions of fact, and we find no legitimate ground for disturbing their verdict. It must remain.

The alleged irregularity as to the jury was presented on a motion to set aside the verdict, based upon affidavits in support of the motion, and affidavits read in opposition thereto. The court properly denied the motion.

*People* v. *Gonzales, supra ; Cox* v. *People, supra ; People* v. *Petrea,* 30 Hun., 98, 1 N. Y. Crim, 198 ; *Wilson* v. *Abrahams.* 1 Hill, 207. *Ostrander* v. *People,* 28 Hun., 48; 1 N. Y. Crim. 274 : *People* v. *Draper,* 28 Hun., 2; 1 N. Y. Crim., 529.

In *People* v. *Menken,* 36 Hun., 91 ; 3 N. Y. Crim. 233, we held that a verdict of jury in a criminal case will not be set aside for irregularity or improper conduct upon the part of jurors, unless it be shown that the defendant was prejudiced thereby. It is very clear that the juror Babcock in leaving the Waverly house, where his fellows were kept, in company with an officer, who accompanied him to the Allman house to pay a bill, did not receive any impressions about the case, and it is clear that the defendant was not prejudiced thereby. That circumstance furnished no ground for disturbing the verdict. *People* v. *Menken, supra.*

The conviction, order and judgment should be affirmed.

BOARDMAN, J., and FOLLET, J., concur.

Upon appeal to the Court of Appeals the following opinion was rendered by that court :

ANDREWS J.,—The defendant was convicted at the Oyer and Terminer in Herkimer County, on the 6th day of October, 1885, of the murder of her husband, William Druse, in the Town of Warren in that county, on the 18th day of December, 1884.

The general term has affirmed the conviction, and the only questions coqnizable in this court are those arising upon exceptions taken in the course of the proceedings. *People* v. *Boas*, 92 N. Y. 560; 1 N. Y. Crim, 287; *People* v. *Guidici*, 100 N. Y., 503; 3 N. Y., Crim, 551.

It is not disputed that the deceased came to his death by the act of the defendant. The only defense attempted to be made on the trial was justifiable homicide.

The history of the transactions at the house of Druse on the day of the homicide, as narrated by the witnesses on the part of the People, discloses one of the most remarkable tragedies to be found in the annals of crime. The deceased was a farmer and lived with his wife and their two children (Mary, of the age of about nineteen years, and George, of the age of about ten years), on a small farm in the Town of Warren. Frank Gates, a nephew of the defendant about fourteen years of age, was also, at the time of the homicide, a member of the family. The husband and wife had frequent altercations, and their relations for several yeas prior to the homicide had been very unpleasant. He was a shiftless farmer, a poor provider, often abusive to his family, and the contracting by the wife of small debts at the stores for clothing and supplies for herself and her children was the occasion of frequent quarrels between them.

The homicide occurred on the morning of the 18th of December, in the kitchen of the house. The sole evidence of eye witnesses of the transaction is that of Frank Gates and George Druse and his sister Mary. The two boys were sworn on the part of the people, and Mary Druse, upon whose testi-

mony alone the defense of justifiable homicide was sought to be supported, was sworn in behalf of the defendant.

The testimony of the two boys, who differ as to some of the details, but who agree in the main facts, may be briefly stated. It appears from their story that the deceased, after having done his chores, came in to his breakfast and sat down at the table in the kitchen, with his back to the stove. The defendant, the two boys and Mary Drüse were in the room, but were not at the table. The deceased commenced finding fault with the tea, addressing his wife in harsh and profane language, and complaining of the store bill. The defendant went into the buttery or pantry and came out with a revolver, which she held under her apron. She then spoke to the boys in a low tone and told them to go out doors. They went out and George testified that he heard two or three shots. Frank Gates heard a noise as of chairs being tipped over, but heard no shots.

The defendant then called Frank Gates into the house. He came in and found Druse sitting in his chair with a rope around his neck, and the defendant required Frank to take the pistol and fire at Druse, using at the same time threatening language. He took the pistol and fired as directed, and after that the defendant took the pistol and fired again at her husband. He fell, or was thrown from the chair, and the defendant then took an ax and hit him on the head, and he said, "Oh Roxy, don't!" She then severed the head from the body and rolled it up in a newspaper or a skirt, and carried it into the parlor. She then directed the boys to go up stairs and bring down a straw tick, which they did, and placing the body upon that, it was dragged into the parlor. She then sent the boys down to a brush lot to get a sharp ax, which they brought. She had newspapers placed over the kitchen windows, and set Frank Gates and her daughter Mary to watch them. She afterwards sent the boys out after wood. They brought in dry shingles in a clothes' basket, and they were taken into the parlor. She then sent Frank Gates to a neighbor's for matches.

The day was apparently spent by the defendant, assisted by her daughter, in cutting to pieces, and burning the body of her husband, while in the afternoon the boys amused themselves by playing checkers. The next day the refuse of the stoves, containing the unconsumed portions of the body, was collected and put into a box, which was placed in a cutter and taken by the defendant, Mary, Frank and George, and dumped among some bushes in a swamp. Subsequently Frank Gates, by her direction, threw the ax and revolver into a pond, where they were found after the arrest of the parties.

The defendant represented to neighbors that her husband had gone to New York, and to divert suspicion she telegraphed to a friend, asking : " Is William there ? "

The testimony of Mary Druse, who was jointly indicted with her mother for the murder, was introduced to show that her father at the time of the homicide had attacked her mother with a knife, under circumstances which justified the killing. It is sufficient to say that her narration was very improbable, and was inconsistent with some of the conceded facts, and that the jury disbelieved her. The testimony of the two boys was confirmed as to the main facts, by the confession of the defendant to the witness McDonald.

It will be seen from this *résumé* of the principal facts that there was abundant evidence to justify the conviction. The evidence on the part of the People supplied the elements necessary to the crime of murder in the first degree. The general term, in a careful opinion, has examined the case upon the facts and the law, and reached the conclusion that no error was committed on the trial ; in which we fully concur.

We shall content ourselves with a reference to a few of the exceptions, although all of these seem to be unsubstantial, and none of the questions raise any doubt as to the correctness of the rulings.

1. The court in its discretion properly permitted the district attorney to call the attention of the witnesses Frank Gates and and George Druse to particular facts, after they, without in-

terruption, had gone through the story of the incidents of the 18th of December. We think the judge carefully guarded and protected the legal rights of the defendant in their examination.

2. The court properly excluded the defendant's offer to show by the witness Van Evera that the deceased treated his domestic animals with cruelty. The rule is that after evidence has been given by a defendant, tending to show that the homicide was committed in self-defense, he may follow it by proof of the general reputation of the deceased for quarrelsomeness and violence. But a defendant is confined to proof of general reputation, and evidence of specific acts of violence towards third persons is inadmissible. *People* v. *Lamb*, 2 Keyes, 371; *Eggler* v. *People*, 56 N. Y., 643; *Thomas* v. *People*, 67 N. Y., 218.

This principle plainly excludes the evidence offered.

3. The confession of the defendant, to the witness McDonald, was properly admitted. It was not made under the influence of fear produced by threats, nor upon any promise of immunity from prosecution, and was therefore admissible, within the general rule prescribed by section 395 of the Code of Criminal Procedure.

It is immaterial that when made the defendant was under arrest. The confession was voluntary, and was not within the rule recently applied in the *Case of Mondon* 4 N. Y. Crim. 552, excluding confessions made by an accused prisoner, as a witness who has not been informed of his legal rights.

4. The court properly excluded evidence to show that the deceased robbed his father, when in his coffin, of his grave clothes and wore them at the funeral. It was wholly irrelevant and immaterial.

We leave the other exceptions without special notice. Most of them are considered in the opinion below, and are satisfactorily answered. There was no exception to the charge. It fully stated the facts and the law applicable to the case.

We see no reason for disturbing the judgment. It should therefore, be affirmed.

All concur.

NOTE.—In a case of homicide where an assault has been made from which death ensued it is competent to show the reputation of the assailant who was killed for quarrelsomeness, vindictiveness and other like traits but such evidence is only admissible when the assault was such as to justify killing in self defense or prevent great impending or imminent danger of bodily harm. *Abbott* v. *People*, 86 N. Y. 460, 470, and cases cited.

In the impeachment of a witness, the inquiry should be confined to his general reputation for truth and it should not extend to general moral character. *Kennedy* v. *Upshaw*, (Tex.) 1. S. W. Rep. 312, citing *Gough* v. *St. John* 16 Wend. 653; *Bakeman* v. *Rose*, 14 Wend. 110; *Fowler* v. *Ins. Co.*, 6 Cow. 675; *Townsend* v. *Graves*, 3 Paige, 456.

Where the character of a witness is in question it is improper on the cross-examination of an impeaching witness to ask if the witness has any personal knowledge of any particular act of bad conduct on the part of the witness whose character is being assailed, nor is such testimony competent on the re-direct examination. *Fox* v. *Commonwealth* (Kentucky Ct. of Appeals, Sept. 1886.) 1. S. W. Rep. 396.

Upon the trial previous statements made out of court by a witness who is proved to have been an accomplice are admissible to contradict or impeach his evidence. *People* v. *McCallam*, 5 N. Y. Crim., *infra.*

It may be proved that a witness called by the opposite party had expressed out of court an opinion different from that expressed by him on the witness stand. *Cockran* v. *Amsden*, (Ind.) 2 West Rep. 224.

A juror's visit to premises described at trial after jury had agreed upon and sealed up their verdict and separated made merely to gratify his curiosity, is no ground for setting aside the verdict. *Commonwealth* v. *Desmond*. (Mass.) 2 New Eng. Rep. 98.

Where the accused testifies in his own behalf he is to be treated as any other witness. *State* v. *Palmer*, 88 (Mo.) 568; *State* v. *Anderson*, (Mo.) 5 West Rep. 420; *Boyle* v. *State*, 105 Ind. 469; *Thomas* v. *State*, 1 West. Rep. 309; *Held* v. *State* (Neb.), 30 N. W. Rep. 626; *State* v. *Pfefferle* (Kans.), 12 Pac. Rep. 406; *State* v. *Rider*, (Mo.) 6 West. Rep. 458. *People* v. *Courtney*, 1 N.Y. Crim. 556.

A party disappointed in his own witness may, to refresh the witness' recollection ask him if he has not made contradictory statements, but he cannot prove such statements by other witnesses. *Hildreth* v. *Aldrich*, (R. I.) 1 New Eng. Rep. 801.

The voluntary testimony of a witness at an inquest will not be rendered inadmissible on indictment subsequently found against her by the fact that in reply to her question before signing the testimony the assistant district attorney said he did not know whether it would criminate her. *Epps* v. *State*, 102 Ind. 539.

The question whether a confession is voluntary is to be decided primarily by the court and submitted to the jury with the instruction that they may consider all the evidence and that they should exclude the confession if on the whole evidence they are satisfied it was not voluntary. *Commonwealth* v. *Preece*, 140 Mass. 276.

The statement of the trial judge that, in estimating the value of the testi-

mony of defendant as a witness, his habit and character of drinking and gambling should be taken into consideration in a case where there was no such testimony as to defendant is sufficient to require a reversal. *Bulan* v. *Granger* (Mich.) 6 West. Rep. 420.

Jury are sole judges of fact, weight of evidence and credibility of witness. *State* v. *Anderson*, (Mo.) 5 West. Rep. 420.

Separation or misconduct of jury known to and not objected to by accused until after verdict is not a ground for a new trial. *Henning* v. *State*, (Ind.) 4 West. Rep. 470.

Upon the point that if deliberation and premeditation precede a homicide, no particular time is necessary previous to the killing to make the offense murder in the first degree, see *People* v. *Majone,* 1 N. Y. Crim. 86; *People* v. *Mongano,* 1 N. Y. Crim. 411; *People* v. *Conroy,* 2 N. Y. Crim. 565; *People* v. *Kiernan,* 3 N. Y. Crim. 247; 4 N. Y. Crim. 88.