THE STATE OF VERMONT *v.* LEVI K. JOHNSON.

*Rape.   Incest.   Evidence.*

Upon a trial upon an indictment for rape or incest, if the person upon whom the offence is charged to have been committed is examined as a witness for the prosecution, she may be inquired of, upon cross-examination, whether she had not, at certain specified times and places, had sexual intercourse with other men whose names are mentioned. BENNETT, J., dissenting.

*Quaere*, whether the witness would be bound to answer such an inquiry.

Indictment, in three counts, for rape and incest. Plea, not guilty; trial by jury, May Term, 1855,—UNDERWOOD, J., presiding.

The state's attorney called, as a witness, Sarah E. Johnson, named in the indictment, and alleged to be the daughter of the respondent, whose testimony tended to prove the allegations in the indictment, and that the respondent had had sexual connection with her at three several times, and that she had been delivered of a child in consequence thereof.

Upon cross-examination, the counsel for the respondent proposed to inquire of the witness whether she had had sexual intercourse with men, other than the respondent, and particularly whether she had had such intercourse with particular men, (naming them) at particular times and places, (specifying them,) previous to the time when, as she testified, the respondent had intercourse with her, and also after that time, and before she discovered she was pregnant. To this testimony the state's attorney objected, and the court refused to allow the question to be put to the witness. To this decision the respondent excepted. The jury returned a verdict of guilty.

*Washburn & Marsh* for the respondent.

*J. Barrett*, state's attorney, for the prosecution.

The question as to intercourse with other men was properly ruled out. Roscoe Cr. Ev. 801; 1 Phil. Ev. (Cow. & Hill's ed.) 176; 3 Green. Ev. 195, § 214.

The opinion of the court was delivered by

ISHAM, J. In prosecutions for offences mentioned in this indictment, the prosecutrix is, from necessity, a competent witness for the state. The credibility of her testimony, however, and her general character for truth, as well as for chastity, are matters involved in the trial of the case, and are exclusively to be determined by the jury. 2 Arch. C. P. 307. On the counts in which the respondent is charged with the crime of rape, we think the inquiry proposed to the prosecutrix, on her cross-examination, whether she had not had sexual intercourse with other men, both before and after the time in which she had testified the offences were committed, was proper, and should have been allowed. The inquiry was particular in specifying the names of the persons with whom, and the places where such connections were had. In all cases of

this character, the assent of the witness to the act is the material matter in issue, and on that question the defense generally rests on circumstantial testimony. In determining that question, which is purely a mental act, it is important to ascertain whether her consent would, from her previous habits, be the natural result of her mind, or whether it would be inconsistent with her previous life, and repugnant to all her moral feelings. Such habits as are imputed to the witness by this inquiry, have a tendency to show such consent, as the natural operation of her propensities, and rebut the inference or necessity of actual violence. It is upon this principle that the authorities in England and in this country are uniform in holding that it is competent for the respondent, without any cross-examination of the witness, to introduce witnesses showing that the prosecutrix is a woman of ill fame, of general lightness of character, a street-walker, and that she associates with persons of lewd and dissolute character. Roscoe Cr. Ev. 801. Arch C. P. 307. 3 Stark. Ev. 951. *Rex* v. *Clarke*, 2 Starkie N. P. C. 241. *State* v. *Camp*, 3 Georgia 419. *People* v. *Abbott*, 19 Wend. 192. *State* v. *Jefferson*, 6 Iredell 305. Those cases are founded upon the principle that such testimony is competent, not merely for the purpose of impeaching her general character for truth, but to show on her part, a corrupted mind, from which her consent to such an act is the natural result of her inclinations. It certainly would require less proof on such evidence to rebut her testimony of actual violence, than it would where the mind and moral sensibilities of the witness are uncorrupted by such habits. A jury would be warranted on such testimony, in finding her consent from slight circumstances, and, ordinarily, a conviction would not be justified on her uncorroberated testimony. But when the character of the prosecutrix is unaffected by such considerations, her testimony showing actual violence, and that no consent was given, would not be overcome but by strong and almost irrefragible proof. If the fact, that the witness is a woman of bad fame, can be shown by the respondent, by introducing witnesses showing her general character, it would seem to follow, as a necessary consequence, that it is competent to prove the same fact on the cross-examination of the prosecutrix, by inquiring into the particular facts upon which her general character is founded ; as observed by WILLIAMS, J., in *Rex*

v. *Martin*, 6 Carr. & Payne 562, " the doctrine that you may go into general evidence of bad character in the prosecutrix, and yet not cross examine into the specific facts, I confess, does appear to me to be not in strict accordance with the general rules of evidence." If, in proof of the bad character of the prosecutrix, the respondent relies upon witnesses introduced by him for that purpose, he will be confined to the proof of her general character, and will not be permitted to prove specific facts, as it is not to be presumed that the state can be prepared to meet or explain those particular events in her life. But where the prosecutrix is a witness, and the inquiry is directed to her on cross-examination, that reason does not exist, nor does the principle apply, as the presumption in such case arises that, in relation to such specific facts, she is able to give satisfactory explanations, if such explanations can be made. Whether the prosecutrix would *be bound* to answer such inquiries, as being matters tending to her disgrace, is not the question before us. The question, now, is not one of privilege. It was not upon that ground the inquiry was denied, but the inquiry was held improper when no such privilege was interposed. In such case, we apprehend, the authorities in England and in this country are decisive that it is competent for the respondent, on the cross-examination of the prosecutrix, to make the proposed inquiry. In the case *People* v. *Abbott*, 19 Wend. 192, it was held, that " on the trial of a person charged with the crime of rape, the inquiry may be made of the prosecutrix whether she had previous connection with other men, and that she, in such case, is not privileged from answering." The subject was examined by JUSTICE COWEN, with his usual learning and research, both on principle and authority ; and it is sufficient to refer to the opinion and reasoning of the court in that case, as fully expressing the views we now entertain on this question. That is the only case in this country which we have been able to find, in which this question has directly arisen. The cases of *Rex* v. *Hodgson*, Rus. & R. C. C. 211 ; 3 Carr. & Payne 589, note *(a)*, and *Rex* v. *Clarke*, 2 Starkie N. P. C. 241, both decided in 1812, are relied upon as establishing the principle that such inquiries are improper. In the first case, as reported in 3 Carr. & Payne, the question now before us does not appear to have arisen in the case, and the court expressed no opinion upon

it. The case was an indictment for rape, and the prosecutrix was inquired of, on her cross-examination, whether she had not before had connection with other persons, and with a particular person named. Wood, B., held, that " she was not bound to answer these questions ;" and this opinion was confirmed by the twelve judges. The decision of the court was upon the mere question of privilege, and not that the inquiry was improper, when the privilege of the witness is not interposed. The prisoner then offered to prove, by witnesses, particular facts not connected with the present charge. But for the reasons which have been stated, such evidence was clearly inadmissible. That is the view taken of this case in Roscoe's C. Ev. 164, in which he says, " it does not appear whether the question itself, was objected to, or only that the witness was not bound to answer it." He thinks the witness was privileged, as it imputed to her an offense punishable by the ecclesiastical law. In that view of it, the case has no bearing on the question now before us.

The case of *Rex* v. *Clarke*, was an indictment for an assault, with intent to commit a rape. On the cross-examination of the prosecutrix, she was asked whether she had not been sent twice to the house of correction for having stolen money from her master several years previous. No question of privilege being interposed, she admitted that she had been, and was then permitted to remove the impeachment, by showing her subsequent good character. The prisoner then proposed to call witnesses to impeach her character for chastity, both generally and particularly. The court admitted the evidence as to her general character, but rejected the evidence of particular facts. There was no offer to inquire of the prosecutrix, on her cross-examination, in relation to those particular facts, nor was there any decision of the court that such an inquiry would be improper. It would seem to be as proper as to inquire of her, whether she had not been confined in the house of correction for larceny.

But if we are to consider these cases as having decided the doctrine as contended for by the counsel for the state, and in that light, by some authors, they have been so considered, it is very clear that, to that extent, those cases are not now regarded as of binding authority in the English courts. The case of *Rex.* v. *Barker*, 3

Carr. & Payne 589, decided in 1829, was an indictment for rape in which it was held by JUSTICE PARKE, after consultation, that it was competent for the prisoner to inquire of the prosecutrix, whether " she were not on Friday walking the High street of Oxford, to look out for men ; and whether she was not walking, on Friday last, in the High street, with a woman reputed to be a common prostitute." The case, it will be perceived, was decided, after a particular reference to the case of *Rex* v. *Hodgson.* In the case of *Rex* v. *Martin,* 6 Carr. & Payne 562, decided in 1834, it was observed by WILLIAMS, J., " I was counsel in the case of *Rex* v. *Hodgson.* The question in the present case is as to previous intercourse with the prisoner, and the question there was as to previous intercourse with other men. I shall certainly receive the evidence, and I must say that I never could understand the case of *Rex* v. *Hodgson.*" In the case of *Rex* v. *Aspinwall,* 6 Carr. & Payne 562, note (*a*), it was held, that " the prisoner might show that the prosecutrix had been previously criminally connected with himself. The circumstances that the prosecutrix was in the streets of Oxford, looking for men, that she was in company with women of ill fame, and that she had had previous connections with the prisoner, are all particular facts, and were not connected with the charges then made, and concerning which the prisoner was permitted to inquire of the prosecutrix, on her cross examination. In an action for seducing the plaintiff's daughter, she may be cross-examined as to the particular acts of intercourse with other men, and if she deny them, then such persons may be called to contradict her, and may be asked as to the fact, and time, and place of the occurrence. *Verry* v. *Watkins,* 7 Carr. & Payne 308. When the general rule is given in the authorities, that evidence of particular facts is not admissible, reference is had to cases where witnesses for that purpose, are introduced by the respondent; and not to cases where the prosecutrix is a witness on the part of the state, and the inquiry is directed personally to her, on her cross-examination. In such case, we think, the inquiry may be properly made, and that the authorities fully sustain the rule on this question, as it was held in the case of *The People* v. *Abbott,* 19 Wend. 192.

The testimony of Sarah E. Johnson was also used on the count charging the respondent with the crime of incest. The birth

of a child, which she swore was the result of that intercourse, was one circumstance relied upon as a proof of his guilt. The fact that she had such intercourse with other men, at and about the time the child was begotten, has a strong tendency to impeach her testimony in that particular, and to rebut the evidence of the respondent's guilt, arising from that circumstance. In prosecutions for bastardy, when a person is charged by the oath of the woman with being the father of the child, such testimony has always been held admissible to rebut her testimony, as to his being the father. *Lord* v. *Schevering*, Thatcher C. C. 26. *Ginn* v. *Commonwealth*, 5 Litt 300. *Fall* v. *Overseers &c.*, 3 Mumf. 495. The witness may be interrogated on her cross examination as to the particular persons with whom such connections were had, and the time and places of their occurrence. The state, having proved the birth of the child, and relied upon that circumstance as evidence of the respondent's guilt, we see no more objection to such inquiries being made on her cross-examination, than in prosecutions for bastardy. New trial granted.

BENNETT, J., dissenting. I cannot concur in the opinion expressed by a majority of the court. It is to be conceded, that in prosecutions of this kind, the general character of the prosecutrix for chastity is involved, and put in issue, and the rule relative to the impeachment of her character, in this respect, is thus summed up in Greenleaf's Ev. vol. 3, § 214. "It must be done by general evidence of her reputation, in that respect, and not by evidence of particular instances of unchastity, nor can she be interrogated as to a criminal connection with any other person, except as to her previous intercourse with the prisoner himself." The rule is substantially the same in all the elementary writers upon evidence that I have been called upon to examine. A general want of chastity may furnish a basis for a presumption that the illicit connection was by consent, and thus it becomes material to the issue. But no such presumption should be allowed to arise from a particular instance of an illicit connection with another person. Presumptions cannot rest upon mere suggestion or surmise. They must have some ground to stand upon, some facts upon which they can arise. I

am fully aware that in the case of *The People* v. *Abbott*, 19 Wend. 192, the law is claimed to be, that in prosecutions of this kind, the defendant may prove a particular instance of a previous illicit connection between the prosecutrix and another person, and that such fact may be proved upon a cross-examination of the prosecutrix, or by any other witness. I must say, that I consider the case in the 19 Wendell, as a departure from the English law upon this subject, and as theoretical, and unsound in principle, and, for one, I have no disposition to follow the lead of that case. The error in that case, in my view, is, in assuming that a presumption of consent might arise from the fact of a previous illicit connection with some other person, and when JUDGE COWEN undertook to dispose of the cases of *Rex* v. *Hodgson* and *Rex* v. *Clark*, as being overruled by the laws of human nature, I think he undertook too much. Though we may concede, so far as our moral convictions are concerned, to use the language of JUDGE COWEN, that "one who has already started on the road to prostitution, would be less reluctant to pursue her course, than one who still remained at her home of innocence," yet courts of justice cannot act upon evidence addressed simply to their moral convictions. It might, no doubt, have an effect upon our moral convictions, to show on a trial for theft, that the defendant was given to stealing, yet courts of justice could not act upon such a fact, and why should we presume that a female continues in a voluntary course of lewdness, because she has had, at some previous time, a sexual connection with some other man. If the law will not allow such evidence to be the basis of a presumption, it should not be received. In *Rex* v. *Hodgson*, Russell & Ryan's Crown Cases 211, and in *Rex* v. *Clark*, 2 Stark. 241, it was expressly held that evidence of particular acts of intercourse between the prosecutrix and other persons, could not be shown by the defendant.

In the case of the *The State* v. *Jefferson*, 6 Iredell 305, the court of North Carolina, upon the authority of those cases, excluded, as irrelevant to the issue, particular acts of familiarity with other men, and this was the very point in judgment in that case. The only point decided in *Camp* v. *The State of Georgia*, 3 Kel. 419, was, that general evidence of want of chastity was admissible.

It is said in the case of *The People* v. *Abbott*, in Wendell, that

the cases of *Rex* v. *Hodgson,* and *Rex* v. *Clark,* have been given up in England, but, to my mind, the remark is gratuitous. The cases which show that a previous connection with the defendant himself is admissible, stand upon that peculiar ground, and such was the case of *Rex* v. *Aspinwall,* 2 Starkie's Ev. 700, and also the case of *Rex* v. *The Martins,* 6 Carr. & Payne 562. This latter case goes no further. Though WILLIAMS. J., in this latter case, remarked that he was counsel in the case of *Rex* v. *Hodgson,* and could never understand that case, yet that does not show that that case has ever been given up or shaken in England. The case of *Rex* v. *The Martins,* was at *nisi prius,* and no such question was before the court as was decided in *Rex* v. *Hodgson,* and it is no uncommon thing for counsel not to be able to comprehend a decision adverse to their client.

The very nature of things show, that previous acts of familiarity between the prosecutrix and the prisoner, stand upon that peculiar ground, and are competent, as tending to prove consent. In the case of *Regina* v. *Cloys,* 5 Cox's Crown Cases 146, decided in 1851, the learned counsel for the prisoner conceded the law to be, that he could not go into particular acts. It can hardly be supposed that this concession would have been made, if *Rex* v. *Hodgson* and *Rex* v. *Clark,* had been given up in England. It has been said that the case of *Rex* v. *Barker,* 3 Carr. & Payne 589, shows that proof of particular facts may be given in evidence, and is opposed to *Rex* v. *Hodgson* and *Rex* v. *Clark.* But I think not. In the case in the 19th Wendell, the case of *Rex* v. *Barker* is treated as an authority to show that general evidence of bad character, as to chastity, may be received, and the case is viewed in the same light by PATTERSON, J., in *Regina* v. *Cloys,* 5 Cox's Crown Cases: Though PARKE, J., who tried the case of *Rex* v. *Barker,* at first thought that to permit the prosecutrix to be inquired of whether she was not, on a particular day, walking in High street of Oxford, to look out for men, with a woman reputed to be a common prostitute, would be to conflict with *Rex* v. *Hodgson,* and *Rex* v. *Clark,* and allow particular acts to be proved, but upon consultation, the inquiry was allowed to be put, and I think correctly. It was proving something more than particular acts. High street, no doubt, was understood to be a common resort for

women of ill fame, and would be avoided by all virtuous women, and if a female was found walking in that street to look out for men, in company with a woman reputed to be a common prostitute, it would tend to show that she also was a common prostitute, and in character, it would be the same thing as to show she was an-inmate of a house of ill fame. That this case stands upon the ground, that the facts offered to be proved went to show a general want of chastity, would seem to follow, from the fact that the inquiry was not confined to a time previous to the alleged rape. If it was regarded as evidence of a particular fact, the court would no doubt, have confined the counsel to acts previous to the alleged offence, if they had decided to admit the testimony at all. In *The People* v. *Abbott*, the evidence was confined to a previous connection. So it is in the civil actions for seduction. See *Elsam* v. *Faucett*, 2 Espinasse 562; *Cook* v. *Berty*, 12 Modern 232.

In cases of seduction the defendant may prove on trial that the daughter has been previously criminal with other persons, and such is the case of *Verry* v. *Watkins*, 7 Carr. & Payne, 308; but it is only admissible on the question of damages.

The plaintiff cannot object to the proof of such facts by witnesses called by the defendant on the ground of surprise. She is bound to come prepared to meet them, they being pertinent on the question of damages. But in an indictment for a rape, such prior acts of criminal conduct are not competent under the issue. If they were, the government attorney could not claim to reject them on the ground of surprise. To preclude the defendant from proving such facts by witnesses by him called, on the ground of surprise to the other party, and yet permit him to prove the same facts upon a cross examination of the prosecutrix, looks to me like judicial trifling. If the defendant cannot prove a prior connection between the prosecutrix and a third person, by witnesses by him called, it must, I think, follow, from principle, that he could not prove the same facts by the prosecutrix herself.

It is equally immaterial to the issue in either case; and it is, in my mind, of no importance from what source it is sought to make proof of the fact.

With this view, I have no occasion to examine the question of

privilege, and to see whether, if it existed in the present case, it was properly called into exercise in behalf of the witness.

The attorney for the government objected to the questions put to the witness; and the court refused to allow the question to be put.

It is assumed that the privilege of the witness being personal, it would be error in a court to exclude a question material to the issue, and which the witness was not bound to answer, unless the witness first claimed her privilege. But I hold it to be the duty of the court to protect a witness; and when a question is put to one, though it may be material to the issue, which upon its face he is not bound to answer, the court may, upon its own mere motion, or upon motion of counsel, refuse to allow the question to be put to the witness. This has been the usual practice at *nisi prius*. See *Rex* v. *Hodgson*, R. & R. 211; *Dodd* v. *Norris*, 3 Camp. 519; *Rex* v. *Lewis*, 4 Espinasse 222; *Cundell* v. *Pratt*, 1 M. & Malk. 108. If the witness remains mute, it may well be considered he adopts the claim of privilege made in his behalf.

If the witness waives his privilege, he should be examined. If it was necessary to sustain the ruling of the county court, it might well be presumed the court proceeded upon the ground of the privilege of the witness; but considering the testimony, as I do, not relevent to the issue, it is of no importance further to consider the question of privilege, and whether it existed or not.

In regard to the count in the indictment, for incest, it strikes me that the fact, that the prosecutrix stated that she had been delivered of a child in consequence of the connection with the respondent, was of no possible importance. It seemed to have fallen out inadvertently. It was a fact not sought for by the prosecution, and not objected to by the defendant. The simple fact that the girl was delivered of a child, had no tendency to prove that such child was begotten by the defendant, and, much less, to prove that the sexual connection in which it was begotten was against her will. It is a fact in no way confirmatory or bearing upon the position that the daughter had an illicit connection with the father, which is the point to be established under the count for incest.

If, then, the fact of her *pregnancy*, and the birth of the child, were of no importance to the prosecution, and irrelevant and immaterial to the issue, the case called for no rebutting testimony in

that particular, and it was not error for the court to exclude such testimony when offered. In cases of seduction, the birth of a child begotten by the defendant, is a material part of the plaintiff's case; and in prosecutions for bastardy, where the question is upon the *paternity* of the child, it is quite material in defense, to show that the mother had connection, about the time she swears the child was begotten, with other men. In prosecutions of that character, such a fact has always been allowed to be proved in our courts, and the inquiry, as to it, has been allowed to be made of the mother, who appears as a witness to sustain the prosecution. The inquiry, however, must be confined to about or near the time the child was begotten; otherwise it becomes immaterial. In the inquiry put to the prosecutrix, as to her connection with other men, before the child was begotten, there is no limitation as to time. The time subsequent, is only limited, by the inquiry, to some period before she discovered she was in a state of pregnancy. It might have been one, two or three days before, as well as at any other time. If this had been a prosecution to fix the paternity of an illegitimate child, the inquiries proposed to be made of the girl, were too unlimited, in range of time, to have rendered their rejection error. I think all the evidence, the object of which was to show particular instances of lewdness between the prosecutrix and other persons, was properly excluded, whether to be proved upon a cross-examination of the prosecutrix, or by witnesses called on the defense.