## FRANK P. KEARNEY *v.* THE STATE.

68  233
72 1008
68  233
a74  519
68  233
83  413
68      233
91      263

1. CRIMINAL LAW.  *Murder.  Evidence of distinct homicide by accused.*
   It is not competent for the state in a murder case either to show motive for the killing, or to attack the defendant's character for peace, by evidence that on a former and independent occasion he had killed a man.

2. EVIDENCE.  *Reputation of accused.  Particular acts.*
   On the issue of defendant's reputation for peace, evidence of particular acts is incompetent.

3. EXPERT TESTIMONY.  *Insanity.  Hypothetical case.*
   On cross-examination of an expert witness as to the sanity of the accused, it is error to allow the state to ask if under certain hypotheses, which are without support in the evidence, witness would consider a man sane.

4. EVIDENCE.  *Instruction.  Insanity.  Malice.*
   An instruction which tells the jury that if it had no reasonable doubt of the sanity of the accused at the time of the killing, "then, if the jury believe the defendant shot and killed the deceased, they will find him guilty of murder," is erroneous.  There must not only be sanity, or capability of malice, but the actual existence of malice to warrant conviction.

5. SAME.  *Instruction.  Weight of evidence.  Insanity.  Code 1880, § 1714.*
   Under the statute, code 1880, § 1714, prohibiting judges from giving instructions based upon the weight of evidence, it is error to give the following charge: "A jury is not warranted in inferring that a man is insane from the mere fact of his committing a crime (if the jury believe such was committed by him), or *from the enormity of such crime,* or from a mere apparent absence of adequate motive, that may or may not appear for it, for the law presumes, from a killing with a deadly weapon, a bad motive, and that it is prompted by malice, if nothing else appears in evidence."

6. CRIMINAL RESPONSIBILITY.  *Test.  Instruction thereon.*
   Capacity to distinguish between right and wrong is essential to criminal responsibility.  It is, therefore, error to charge the jury that if, at the time of the killing, "the mind of the defendant was capable of knowing that, if he shot the deceased, not in his own self-defense, he was committing an offense against the law of the land, it will not matter what the jury believe was the moral conception of the defendant of the act at the time."

FROM the circuit court of Warren county.

HON. J. D. GILLAND, Judge.

The case is stated in the opinion.

*T. C. Catchings*, for appellant.

It was error to allow Dr. Quin, a witness for the defense, to be asked and to answer the question whether the accused had ever killed a man before. The mere fact that Kearney may have killed another man should not in the least degree militate against the idea that he was a peaceable man, for *non constat* such killing may have been in self-defense and justifiable. Such a course of examination was most prejudicial to the accused. He did not put his character in issue, and if he had, it was not competent to prove that he had killed another man. Bishop Cr. Pro. § 1120.

2. A second fatal error was committed in permitting the district-attorney to interrogate an expert witness as to his opinion of a man's sanity or insanity based on hypotheses not supported by the testimony. The hypotheses assumed by the questions were that defendant had killed other parties; that after the shooting he walked down to a bar-room and called for a drink, got it, and said, I have killed so and so, meaning the deceased; that he went home and was carried to jail the next morning, and gave a detailed account of the killing to another, immediately afterwards, having seen his lawyer, stating to others that he had been advised by his lawyer not to make any statements. Such questions, and the answers thereto, could not fail to confuse the jury and mislead them to defendant's prejudice. Hypothetical questions must be based on the proven facts or testimony tending to prove facts. 1 Thompson on Trials, § 666.

The fact that they are asked on cross-examination does not alter the rule. Ib. § 628.

3. The 10th instruction directed the jury plainly, and without circumlocution, to find defendant guilty if they believed he killed Fossett, provided only they believed he was sane. This eliminates entirely the question of a felonous intent as an ingredient of murder. The single fact of killing is made sufficient without malice. The test as to the validity of the instruction eliminates the fact of insanity from the case; and it will be seen that the court directs a verdict of guilty. This cannot be done. The accused has a right to have his case passed upon by a jury. The court may define the

crime, and charge fully as to the law, and point out all legal presumptions presented, but it can go no further.    Cooley Con. Lim. 393; 2 Thompson on Trials, § 2149.

4. The 13th instruction is a direct charge upon the weight of the testimony, and besides it is not correct.    *Cunningham* v. *The State*, 56 Miss. 269.

The court cannot single out the enormity of the crime, and call special attention to it.    In *Cunningham's* case, the principal fact relied on to show insanity was the enormity of the homicide, and the court said the defendant was entitled to have the jury left free to determine the question of sanity unembarrassed by erroneous instructions.    The enormity of the homicide is often the only and the best evidence of insanity, as if a man should without warning cut the throat of his most intimate friend.

5. By the 16th instruction a wrong test of criminal responsibility was set up.    Wharton on Medical Jurisprudence, §§ 155, 582.

The true test is whether one charged with crime is capable of forming a criminal intent, or in other words, of knowing right and wrong.    By the instructions the jury are told that one, although morally insane, that is, without conceptions of right or wrong, may be convicted if he knew he was violating a law of the land.    This overrules all the authorities and is supported by none.    Besides this instruction directly conflicts with another wherein the jury are told that the sole question is whether the defendant at the time of the killing was capable of knowing a rightful from a wrongful act.

*L. W. Magruder*, on the same side,

Submitted a brief discussing at length the evidence, and on the instructions passed on by the court making the following points:—

By the 10th instruction the court practically told the jury to convict if it believed the accused was sane.    This was an arbitrary usurpation of the province of the jury.    However clear and indisputable the evidence of guilt, however barren of justification, the question of guilt is one of fact as to which under the constitution none but the jury can speak.    2 Thomp. Trials, § 2149.

The 13th instruction is on the weight of evidence.    It singles

out the one circumstance, the enormity of the crime, and declares the jury are not warranted from this in finding a verdict of guilty. It is true as a matter of law it might not be presumed from this that the accused was innocent, but that is a different proposition from declaring that the jury may not base a verdict on it. *Cunningham* v. *The State*, 56 Miss. 269.

The 16th instruction sets up a false test of criminal responsibility, viz., knowledge of the illegality of the act. The true test is capacity to distinguish between right and wrong. Wharton Med. Jur. §§ 155, 382, 582.

The hypothetical question put to the witness Purnell was plainly incompetent as embracing facts not in evidence. It was equally wrong to allow evidence that accused had on a former occasion killed a man. This does not tend to prove that his general reputation for peace was not good. Bish. Cr. Pro. § 1120.

*L. W. Magruder*, for appellant, made an oral argument.

*T. M. Miller*, attorney-general, for the state.

COOPER, J., delivered the opinion of the court.

The appellant has been convicted of the murder of James Fossett, and sentenced to capital punishment. The defense principally relied on in the court below was that, at the time of the homicide, appellant was insane by reason of an attack of *mania a potu*, resulting from prolonged and excessive use of intoxicating liquor. Many errors are assigned, but we note only such as may be of probable importance in the further prosecution of the indictment.

On the trial of the cause, Dr. R. A. Quin was introduced as a witness by the defendant to prove the character of the defendant for peace or violence, and also as an expert to prove the symptoms and characteristics of *mania a potu*. On cross-examination by the district-attorney, and over the objections of the defendant, the district-attorney was permitted to ask the witness the following question: "Do you know whether or not he [the defendant] has ever killed a man before?" And over like objection the witness was permitted to answer: "I have heard that he had." The defendant

then moved to exclude the question and answer, which motion was by the court denied. This testimony, if admitted at all, must be so either because it was competent as tending to show the intent with which the accused shot Fossett or to attack his character for peace, or to disprove the defense of insanity. If there anywhere appeared in the record anything to suggest that the purpose of the testimony was to show that the declaration of the accused, testified to by one witness for the state, at the instant of the killing, " this is the third son of a bitch I have got," was a sane remark, relating to actual occurrences of the past, then remembered by the accused, a different question would be presented for consideration. The defense of insanity opens a broad field of inquiry, and much evidence which would otherwise be incompetent is admissible, because of the nature of the issue presented. The defendant, claiming incapacity for crime at the particular time of the homicide, subjects all that he then said and did to such scrutiny and investigation as will show whether he then recognized and understood his relations to society, and the nature of the act done by him. If at the instant of committing one homicide he declares that he has previously committed others, and it be true that such others had been committed by him as he states, this statement indicates that he was then sane to the extent at least of remembering correctly what had before occurred, and thus furnishes some light for the solution of the question of his sanity or insanity. But the state did not propose to prove the truth of the statement made by the accused that he had before that killed two other persons. The manifest purpose of the testimony was to show either the motive of the accused in killing Fossett, or to attack his character for peace. In neither aspect should it have been admitted. The fact that the accused had on a previous occasion killed a man, could not prove any of the circumstances under which, or the act by which Fossett was killed, nor throw any light upon the intent with which the accused killed him. The defendant was upon trial for a distinct offense, and that offense not of the character of those in which it is admissible to prove an unlawful purpose by showing guilt of the same character on another and independent occasion. Against one on

trial for passing counterfeit money or forgery, it has been held competent to prove guilty knowledge and purpose by proof of former acts of the same character; but it has never been held that the malice necessary to the crime of murder may be shown by evidence of the prior, independent and disconnected killing of another person. It is probable that the evidence was admitted upon the idea that it was competent by such evidence to attack the character of the accused for peace, to prove which the witness Quin was introduced, but, if this was the ground on which it was received, it was equally erroneous. One accused of crime may introduce evidence of his character such as would make it unlikely that he would commit the crime with which he is charged, and, having thus put his character in issue, it may in turn be attacked by the state. But neither the accused nor the state can resort to particular facts to establish or refute the character thus put in issue. The reputation of the person, or at most what particular witnesses believe of him from his course of life, defines the limits of the rule. One who puts his character in issue is supposed to be prepared to defend it by showing such habits as to generally impress the community or particular persons who knew him favorably. But he cannot be expected to be able to defend particular acts, nor is it just that failing so to do, the burden of guilt in reference to a particular and disconnected transaction should be fixed upon him, and the motive or malice thus discovered imputed to the separate fact under examination. Whart. Crim. Law, § 636 *et seq.*

The next error assigned rests upon these facts: Dr. J. H. Purnell was examined as an expert, and the defendant, for the purpose of establishing his defense of insanity, put to him an hypothetical question, the hypothesis consisting of facts which the evidence of certain witnesses tended to prove. This witness answered that, assuming the supposed facts to be true, the defendant was at the time of the killing suffering from *mania a potu* to such an extent that he could not distinguish between right and wrong. On cross-examination, the state's attorney put to the witness this question: "Immediately after he had shot a man, assuming it to be true that a man had shot another in a bar-room, and immediately afterwards

he had said, ' This is the third son of a bitch I have got,' assuming it to be true that he had killed other parties, and that he had then walked down to another bar-room, and called for a drink and got it and said, ' I have killed so and so,' naming the deceased, and that the defendant went home and was carried to jail next morning, and then gave a detailed account to another party immediately afterwards, and after he had seen his lawyers he stated to them, ' I am advised by my lawyers not to make any statements,' would you consider that man sane or not?" The defendant objected to the question, and the objection was overruled. It is conceded by the attorney-general that the hypotheses stated, except what occurred at the place and time of the killing, were wholly unsupported by any evidence. The supposed facts were imaginary. Unless it be true that one accused of crime may be deprived of a defense recognized by the law as valid and entire if proved, by the fabrication of incriminating facts, the error here committed is palpable and fatal. No argument or observation by this court can give more prominence to it than its mere statement. 1 Thomp. Trials, § 606, and authorities there cited.

The tenth, thirteenth, and sixteenth instructions for the state are erroneous. By the tenth instruction the jury was told that if it had no reasonable doubt of the sanity of the accused at the time of the killing, " then, if the jury believe the defendant shot and killed the deceased, they will find him guilty of murder." In effect, the instruction was that if the defendant was capable of malice, the jury must convict upon proof only of the killing. The court practically settled, by its instruction, the existence of the material ingredient of murder—the malice aforethought of the accused.

The thirteenth instruction is clearly upon the weight of evidence, and therefore should have been refused. By it the jury was told that " a jury is not warranted in inferring that a man is insane from the mere fact of his committing a crime (if the jury believe such was committed by him), or from the enormity of such crime, or from a mere apparent absence of adequate motive that may or may not appear for it, for the law presumes from a killing with a deadly weapon a bad motive, and that it is prompted by malice, if

nothing else appears in evidence." This instruction is a copy of a part of the charge given by Judge Cox to the jury in *Guiteau's Case*, 10 Fed. Rep. 161, and, it is said, properly advises the jury of the insufficiency of the facts therein recited to warrant the inference of insanity. It seems to have been forgotten by court and counsel that the rule which obtains in England and in the courts of the United States, under which the judge is accustomed to express his views upon the weight of the testimony, is by our statute expressly denied. By our code (section 1714) it is declared that "no judge, in any cause, civil or criminal, shall sum up or comment on the testimony, or charge the jury as to the weight of evidence," etc. Inferences from the facts are to be drawn by the jury, unaided and uninfluenced by the court. Our statute means this, or it means nothing. If juries, turning aside from the direction and control of their own judgment, unworthily submit to the impulses of passion, compassion, or prejudice, the responsibility is with them, but the court may not, to prevent any such supposed inclination, invade the province of the jury by informing it what weight should or should not be given to established facts.

By the sixteenth instruction for the state the court informed the jury that, in law, the defendant was responsible for his act if the jury believed that, at the time of the killing, "the mind of the defendant was capable of knowing that if he shot the deceased, not in his own self-defense, he was committing an offense against the law of the land, and it will not matter what the jury believe was the moral conception of the defendant of the act at the time." We suppose it was intended by this instruction to adopt to its full extent the doctrine of *McNaghten's Case*, 10 Clark & F. 200, that one who acts from an insane delusion is criminally responsible if the imaginary facts would not, if real, excuse or justify the act. This standard, accepted by this instruction of sanity, or rather of responsibility of the insane for acts committed by them, excludes the test of capacity to distinguish between right and wrong, and imposes upon the insane the exact responsibility that rests upon the sane, with the single exception that the facts imagined by the insane to exist are for the purposes of his trial to be treated as real.

No matter, said the court to the jury, what "was the moral conception of the defendant of the act [meaning, we suppose, his capacity to distinguish between the right and the wrong], you must convict if the defendant knew he was violating the law of the land." It will not avail to contend that one who has sufficient capacity to know that he is violating a human law must also know that the act also violates a divine or moral law. The instruction assumes that such is not the case, and declares that one not having the capacity to distinguish between right and wrong is liable to criminal responsibility. The rule announced in *Cunningham* v. *State*, 56 Miss. 270, that one who knows and recognizes the difference between right and wrong is criminally responsible, and one who does not is not, is, by the instruction here given, materially and erroneously modified.

*Reversed and remanded.*