JIM BROWN *v.* THE STATE.

1. INSTRUCTION. *Reasonable doubt. Conscientious belief.*

It is error to instruct, in a criminal case, that if a jury conscientiously believe the defendant guilty, he should be convicted. *Burt* v. *State. ante.* 408.

2. SAME. *Assumption of facts against accused.*

In a rape case it is an unlawful assumption against the accused to refer, in instructions, to the female as the person "raped," and to the alleged offense as the crime "committed."

3. SAME. *Capital offense. Informing jury as to punishment.*

In a rape case an instruction for the state is not improper, which, after stating that a verdict of guilty will be followed by sentence of death unless the jury shall fix the punishment at imprisonment, declares it to be the duty of the jury, if agreed as to guilt but not as to punishment, to return a general verdict of guilty, although it is not stated that, in such event, the death penalty will be inflicted.

4. RAPE. *Evidence. Venereal disease previously contracted.*

In a rape case evidence that the prosecutrix. seven years before the alleged crime, contracted a venereal disease by promiscuous sexual intercourse is improper.

5. SAME. *Evidence. Character of prosecutrix. Particular acts.*

On a trial for rape, where there is testimony that the prosecutrix is a common prostitute, without asking her, on cross-examination, as to separate acts of sexual intercourse with others than the defendant. evidence of such separate acts, extending to the time of the

alleged offense, may be given, as showing a continuous course of common prostitution.

6. RAPE. *Evidence. Res gestœ. Corroboration of prosecutrix.*

Where the prosecutrix in a rape case testifies that the defendant, after ravishing her, tied her to a tree and left her, evidence of others that, shortly after the crime was alleged to have been committed, she went to them to untie her hands, is admissible as part of the *res gestœ.*

7. SAME. *Indictment. Sufficiency of averments.*

Where one is convicted on an indictment for rape which avers that the defendant did unlawfully and feloniously rape, ravish and carnally know a certain female, forcibly and againt her consent, a motion in arrest, on the ground that it is not averred that the defendant is a male person is properly overruled.

8. SAME. *Evidence. Hearsay.*

It is error to admit the testimony of a witness that he had heard that the defendant had killed a man. *Kearney* v. *State*, 68 Miss., 233.

FROM the circuit court of Tate county.

HON. EUGENE JOHNSON, Judge.

Appellant, Jim Brown, a negro, was convicted of the rape of Sallie Boyce, also a negro. The conviction rests mainly on the testimony of the woman. She was, to some extent, corroborated. Among other things, she testified that she met the defendant on the way to the field, and that he knocked her down and dragged her some distance, and stamped her and threatened to kill her, and then ravished her; that he then tied her to a tree and struck her on the head with a gun and left her, after which she got loose from the tree and went to a neighboring house with her hands tied, and had the persons there untie them. In corroboration, these persons were, over the objection of the defendant, permitted to testify that the prosecutrix came to them bloody, and with her hands tied, and that they untied them, and, she becoming unconscious, they went to the place of the alleged rape and saw blood on the ground, and that the grass was beaten down. The defendant,

in his testimony, admitted the sexual intercourse, but stated that it was by consent.　He also stated that he afterwards got into a difficulty with the prosecutrix in reference to his agreement to make certain purchases for her; that in such difficulty they came to blows; that she scratched and struck him, when he struck her on the head with his gun; that, fearing she was going to the magistrate to report him, and wishing to be present, he tied her to a tree until he could go to get his mule, and that while he was away she got loose.　There was testimony tending to show that she was a common prostitute, and that defendant's reputation was good.

One Whitten, who testified as to defendant's character, was, on cross-examination, over the defendant's objection, permitted to testify that he had heard that the defendant had killed a man about twelve years before the trial.

Objection was taken to instructions 1 and 2 for the state, on the ground that they authorized the jury to convict, if it was " conscientiously " believed that the defendant was guilty.

Charge 3 for the state instructed the jury that it might return either of the following verdicts, if they found the defendant guilty, to wit: " We, the jury, find the defendant guilty as charged in the indictment, and on this verdict it will be the duty of the court to sentence defendant to be hanged; ·or, We, the jury, find the defendant guilty, and fix his punishment at imprisonment in the penitentiary for life; but if you agree that defendant is guilty of rape, but cannot agree on the punishment, you should not, for that reason, disagree, but return a verdict of guilty." This instruction was objected to because it·did not inform the jury what the consequences to defendant would be if they should find as last indicated.

Instructions 17, 18, 19, for defendant, that were refused, are as follows :

" 17. The court instructs the jury, for the defendant, that they cannot find the defendant guilty in this case unless they believe from the evidence that the defendant struck the wit-

ness, Sallie Boyce, over the head with a gun twice, caus-
ing the blood to flow freely over her head, face, hands and
person; that he then jumped on her, and stamped her, and
that he afterwards took or pulled her fifty yards away, and
ravished her.    And in weighing her testimony on all these
points the jury should consider whether such lines of conduct
would be reasonable, and whether it were possible or probable
that the defendant could have done such act of ravishment, and
such other acts, without becoming bloody himself on his per-
son and his clothing; and if the jury conclude that he could
not have committed this act with which he is charged without
becoming bloody, then they should find him not guilty.    If
they find from the evidence in this case that he did not become
bloody, and was not bloody just after the difficulty with the
witness, Sallie Boyce, and if the jury believe that he must
have been bloody in order to have been guilty, and they have
any reasonable doubt arising out of the evidence in this case as
to whether he was bloody, then they should acquit the defend-
ant.

"18. The court instructs the jury, for the defendant, that if
they believe, from the evidence in the case, that the fact of the
grass being down is a material fact in the case, and that it is
necessary, before they can convict, for them to believe that the
defendant mashed it down by having sexual intercourse with
the witness, Sallie Boyce, then it devolves upon the state to
prove beyond a reasonable doubt, to the entire satisfaction of
the jury, that such grass was mashed down then and there, in
the manner and by the means claimed by the state, and that it
was not mashed down at any other time, or by any other agency.

"19. The court instructs the jury, for the defendant, that
the claim of the state is to the effect that the defendant, a negro
man, 60 years of age, assaulted and beat the witness, Sallie
Boyce, a woman of 40 years of age, out in the field, on an Au-
gust day, until she was wounded and bloody, and that he took
her away to another place, 50 yards away, and there ravished

her; and in considering whether this evidence of her want of consent is true, the jury should determine whether or not it is probable that the defendant, from his age, and from his previous conflict and fight with Sallie Boyce, was physically able to have committed said rape, and whether or not he had sufficient virility for that purpose; and if they have a reasonable doubt, arising out of the evidence in the case, as to whether he did have such physical ability or virility, then they should acquit. The court instructs the jury, for the defendant, that if the evidence in this case shows that witness, Sallie Boyce, was bloody on her head, shoulders and breast, as testified to by witnesses in the case, and that the defendant, who is charged with having been in such close bodily relations with her, was seen just after the difficulty without blood on his person or his clothing, then these are circumstances which the jury should consider as tending to corroborate him in his statement that he did not ravish the said witness, Sallie Boyce.''

In charge 2, defendant asked the court to instruct the jury that, if the witness, Sallie Boyce, is shown by the evidence to be of evil fame, and stands unsupported by other evidence, and that she concealed for any considerable time the charge made, and made no outcry at the time, and there were persons within a few hundred yards of where they were, these were circumstances which afforded a strong presumption that her testimony was untrue. The court modified this instruction so as to instruct the jury that, if she concealed the fact, ''when she was in condition to do so and had opportunity, and did not cry out, not being prevented by threats or fear,'' these were circumstances which the jury might consider in determining whether her testimony was true or untrue.

The modification of defendant's other instructions were as to matters of minor importance, and it is not deemed necessary to set them out. The jury returned the following verdict: ''We the jury, find the defendant, Jim Brown, guilty as charged, but cannot agree as to the punishment, and ask the mercy of the

court.'' Thereupon sentence of death was imposed, and, after motion for new trial overruled, the defendant appealed. The opinion contains such further statement of the case as is necessary to an understanding of the questions decided.

*Phil. A. Rush,* for appellant,

As to the questions passed upon by the court, made the following points:

1. The court erred in refusing instructions 17, 18, 19, 20, asked by defendant. By these it was sought to have the proper principles of law applied to the facts in the concrete. Where there is evidence tending to establish a particular material fact, it is error to refuse an instruction as to its effect. *Levy* v. *Gray,* 56 Miss., 318; *Aldrige* v. *State,* 59 *Ib.,* 250; *Duncan* v. *State,* unreported.

2. The court erred in modifying the instructions asked by defendant.

3. The instructions given for the state are erroneous. The first and second authorized a conviction if the jury ''conscientiously'' believed the defendant guilty. *Burt* v. *State, ante,* 408. See, also, *Hemphill* v. *State,* 71 Miss., 877; *Johnson* v. *State,* 16 So. Rep., 494. The effect of these instructions, especially the second, was to nullify all instructions given for the defendant. The third instruction is so drawn that an ordinary juror would not be informed thereby that a verdict of guilty, on a disagreement as to the punishment, would subject the accused to the death penalty.

4. It was error to exclude the testimony of Murphy that the state's witness, Sallie Boyce, was known to have committed adultery with various persons at intervals running back seven years. The court held that this was going too far back.

5. Perhaps the most glaring error was in permitting the witness, Whitten, to testify that he had heard that defendant had killed a man twelve years previously. This was held not to be going too far back. The only effect of the testimony was

to prejudice the minds of the jury against the defendant. Wharton's Cr. L., § 636 *et seq.;* Bish. Cr. Pro., § 1120; *Kearney* v. *State,* 68 Miss., 233.

The court must readily discern from the record that the defendant was really tried for striking the woman with the gun, and was convicted of rape. The idea of executing a man like appellant for the crime of rape on a self-confessed whore is revolting to every sense of justice.

I leave the court to examine into such other errors as appear in the record.

*Frank Johnston,* attorney-general, for the state.

The appellant was convicted on the testimony of the prosecutrix and corroborating evidence. Of the numerous assignments of error, I shall only notice those relating to the instructions given for the state. By those numbered 1 and 2, the jury was told that if, from all the evidence in the case, it conscientiously believed the defendant guilty, it should convict. The second instruction, in addition, explained the nature of a reasonable doubt, carefully and fully, following the case of *Taylor* v. *State,* 52 Miss., 84. In that case the instruction complained of, which, on account of its "admirable statement of the doctrine," was set out in the opinion of the court, concluded as follows: . . "All that is required to enable a jury to return a verdict of guilty is, after a comparison and consideration of all the testimony, to believe conscientiously that it establishes the guilt of the defendant as charged."

WHITFIELD, J., delivered the opinion of the court.

There was no error in the refusal of the instructions numbered 17, 18, 19 and 20, asked by the appellant, and none in making the modifications made in instructions numbered 2, 5, 11 and 14. Instructions numbered 1 and 2, for the state, fall within the condemnation of *Burt* v. *State, ante,* 408; and the words "beyond all reasonable doubt," should appear in the

fourth instruction given for the state, before the words, "that defendant obtained carnal knowledge of her person," etc. The first instruction for the state assumes, also, that the "female" has been "raped," and that "the crime was committed." The word "prosecutrix" should be substituted for the words "female raped," and the proper correction made as to the other matter. It is due to the learned circuit judge who tried this case below, to state that the case of *Burt* v. *State, supra,* had not been decided when this case was tried below. There is no error in the third instruction for the state. The error assigned as to the remarks of the district attorney is untenable. There must be reasonable latitude allowed the state's representative in presenting the case. He should confine himself to legitimate argument within the record; but while some of the expressions used might have been limited, a too nice criticism must not be indulged along this line.

There was no error in "not permitting the appellant to prove by the witness, Whitten, the conversation had by him with the state's witness, Sallie Boyce, in reference to buying shoes for her, a day or two before the difficulty." It was irrelevant to the issue.

As to the offer to prove by Ike Murphy that the prosecutrix had contracted a venereal "disease in Panola county, seven years before the trial, by promiscuous sexual intercourse," and that the prosecutrix had had "other separate acts of sexual intercourse with other parties named, running on down to the time of the trial," we observe, first, that the former was incompetent, and that as to the latter the witness, Murphy, had been allowed to testify that the prosecutrix was a "common prostitute;" that that was her general character, and she was regarded as "common property;" and the testimony referred to seems to have been offered not so much to show isolated "separate acts" as a continuous, uninterrupted course of common prostitution; and while, in this view, the testimony was competent, under the authority of *Woods* v. *People,* 55 N. Y.,

515; *Rex.* v. *Clay*, 5 Cox Cr. Cas., 146; and *Brennan* v. *People*, 7 Hun (N. Y.), 171—"it was much more than," says the court in 55 N. Y., "an offer of proof of particular acts of lewdness." Regarded as an offer to show that the prosecutrix had had merely "separate acts" of sexual intercourse with others, and to show this by the testimony of independent witnesses, it is to be observed that the prosecutrix had not, as is usually the case, been first asked, on cross-examination, whether she had not had such connection with persons other than the defendant. This character of impeaching testimony, it is true, is resorted to to show that, being a woman of unchaste character, the prosecutrix would be more likely to consent to the act of intercourse under investigation than a chaste woman, rather than as an assault generally upon her credibility; but it is the general practice to first ask the questions on the cross-examination of the prosecutrix. In *State* v. *Johnson*, 28 Vt., 512, the court says: "If, in proof of the bad character of the prosecutrix, the respondent relies upon witnesses introduced by him for that purpose, he will be confined to the proof of her general character, and will not be permitted to prove specific facts, as it is not to be presumed that the state can be prepared to meet or explain those particular events in her life. But where the prosecutrix is a witness, and the inquiry is directed to her on cross-examination, that reason does not exist, nor does the principle apply, as the presumption in such case arises that, in relation to such specific facts, she is able to give satisfactory explanations, if such explanations can be made. When the general rule is given in the authorities that evidence of particular facts is not admissible, reference is had to cases where witnesses for that purpose are introduced by the defendant, and not to cases where the prosecutrix is a witness on the part of the state, and the inquiry is directed to her personally on her cross-examination." And though this distinction is called by Bennett, J., in his dissenting opinion, "judicial trifling," it must be confessed it runs through the cases, whether sound

in principle or not, which we doubt. We note the distinction. in the light of the authorities because the questions were not asked of prosecutrix on cross-examination. We call special attention both to the opinion of the court and the dissenting opinion in this case, as presenting the best reasoning we have found on the subject for and against the admission of such testimony, remarking that *State* v. *Jefferson*, 6 Ired., 305, relied on in the dissenting opinion, was afterwards overruled in *State* v. *Murray*, 63 N. C., 31, and *State* v. *Freeman*, 100 *Ib.*, 429. On the precise point, however, there is some conflict in the authorities: The following authorities hold that it is not competent to show the "separate acts of intercourse with other parties" by independent witnesses : *McQuirk* v. *State*, 84 Ala., 435; *People* v. *McLean*, 71 Mich., 309; 2 Bish. Cr. Pro., §§ 965, 966 (with authorities giving the reason that "such proof would not show her readiness to yield to him," the particular defendant); 2 Whart. Cr. Law, §§ 1151, 1152; *Com.* v. *Harris*, 131 Mass., 336; and many others. Mr. Wharton cites, as holding that such testimony is competent, *People* v. *Abbott*, 19 Wend., 192, in which case the doctrine is most emphatically laid down by Judge Cowen, and this holding of Judge Cowen is approved in *Brennan* v. *People*, 7 Hun, 171, and in *State* v. *Johnson*, 28 Vt., 512, and is pronounced "unanswerable" in *Titus* v. *State*, 7 Bax. (Tenn.), 132. It is very clearly pointed out in *State* v. *Johnson, supra*, that the text of 3 Greenl., § 214, is based mainly on *Rex* v. *Hodgson* (decided in 1812) Russ. & R. C. C., 211 (3 Car. & P. 590, note *a*), and *Rex* v. *Clarke* (decided in 1812), 2 Starkie, 241, and that the decision in the first case "was upon the mere question of privilege," and that in the second the prosecutrix had not been asked, on cross-examination, as to specific acts with specific persons other than the defendant; and it is further insisted that in England these cases have been overruled. It is significant, too, that in the fifteenth edition of 3 Greenleaf (§ 214, note *a*), it is said the other view "has received favor in some states," and one of Greenleaf's

---

. Opinion of the court.

---

authorities is the overruled case, *State* v. *Jefferson*, 6 Ired., 305. As to the privilege of the prosecutrix to decline to answer on cross-examination, it is held in *Titus* v. *State*, *supra*, that the modern authorities settle the question that a witness can claim no such privilege, in accordance with what was the view of Mr. Starkie in his work on Evidence. Shars. Starkie Ev., p. 1871. If, as said by Mr. Greenleaf in volume 1, § 584, "the rules of evidence are founded in the philosophy of nature, in the truths of history, and in the experience of common life," it is very difficult, on any sound reasoning, to uphold the exclusion of such testimony in this particular character of crime. "It would be absurd, and shock our sense of truth, for any man to affirm," says Judge Freeman in *Titus' Case*, *supra*, "that there was not a much greater probability in favor of the proposition that a common prostitute had yielded her assent to sexual intercourse, than in case of the virgin of uncontaminated virtue"—Messalina rather than Lucretia, as Judge Cowen puts it. There is a very full review of the authorities in Judge Cowen's opinion, and in Judge Isham's opinion a fuller one still, and they have very great force in them; but Judge Cowen's views are expressly overruled in *People* v. *Jackson*, 3 Parker, Cr. R. (N. Y.), 391, and the view is clearly against the decided weight of authority, though it may be the better view on principle. See the note to *Smith* v. *State*, 80 Am. Dec., 368, especially authorities at top of page 369, where it is said that, "even admitting the soundness of the general rule, it should not be applied where the prosecutrix is young, inexperienced, has lived a secluded life, and where her proclivities can be shown, and by proofs of specific acts of lewdness," citing *People* v. *Benson*, 6 Cal., 221, and *Shirwin* v. *People*, 69 Ill., 55—both exceptional cases, whose peculiar facts are to be carefully looked to in referring to these cases; and this remark applies also to *Rogers* v. *People*, 34 Mich., 345, and *Bedgood* v. *State*, 115 Ind., 275, also exceptional cases. Many authorities are cited in 19 Am. & Eng. Enc. L., p. 962, the text saying merely

that, "according to the weight of authority, her character can-
not be shown by proof of particular acts of unchastity with
third persons." Regarding the proffered testimony, however,
from the statement in the bill of exceptions before quoted, as
offered rather with the purpose of showing that the prosecutrix
was a common prostitute than of showing isolated separate acts,
we do not deem it necessary definitely to pass now on this exact
point, reserving its decision for a case calling for its precise
adjudication. In this view of the purpose of the testimony,
the action of the court, while erroneous, does not present re-
versible error, for the fact that she was a prostitute had been
otherwise testified to.

There was no error in allowing proof as to the tying, etc.
This was part of the *res gestæ.*

It was manifest error to permit the witness, Whitten, to
state that he had heard that the defendant had killed a man at
Lake View some twelve years before this trial. *Kearney* v.
*State,* 68 Miss., 233.

There was no error in overruling the motion in arrest of
judgment.

For errors indicated, the judgment is

> *Reversed and cause remanded for a new trial.*